## Irvine, et al. v. Stevenson, et al.

(Decided February 18, 1919.)

### Appeal from Madison Circuit Court.

1. Guardian and Ward—Employment of Attorneys—Services.—A guardian is authorized to employ attorneys to prosecute and defend actions for his wards, and to bind their estates to pay a reasonable fee for the services of the attorneys.

2. Guardian and Ward—Payment of Attorneys' Fees.—Before the estate of an infant can be subjected to the payment of counsel fees, upon a contract with the guardian, it must appear, that the services were actually rendered, and that they were reasonably necessary for the protection of the interests of the infants, and that the sums charged, are reasonable and not disproportionate to the value of the services rendered.

3. Guardian and Ward—Allowance of Attorneys' Fees.—The amount allowed for counsel fees, against the estate of an infant, will not be increased on account of the number of attorneys engaged, but, the court will fix a sum for payment for the necessary legal services rendered, and apportion it between the attorneys, as may be equitable.

4. Guardian and Ward—Payment of Attorneys' Fees.—Where attorneys defend an action for wards, by contract, with the guardian, and the guardian pays them, he will be allowed credits in his settlement by the sums paid, if the services of an attorney were reasonably necessary, and the sums paid, were reasonably proportionate to the value of the services, but, in the event the guardian fails to pay for the services, the attorneys may subject the estate of the wards to the satisfaction of their debts, by a suit in equity, in which all the parties, in interest, are made parties.

5. Attorney and Client—Compensation.—In fixing the compensation due an attorney, for legal services, the amount and character of the service rendered, the nature and importance of the litigation, the amount and value of the property, in contest, the skill necessary to properly attend to the business, and the professional standing and skill of the attorney may be looked to, together with the time, labor and trouble expended.

G. MURRAY SMITH for appellants.

J. J. GREENLEAF and JOHN NOLAND for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Harry Crawford, died intestate, on the 10th day of February, 1911, leaving, surviving him, a daughter, Mollie Black, who was the wife of General E. Black, and the mother of an infant son, Harry Crawford Black.

Bettie Irvine was the mother of two illegitimate sons, William Irvine, and Marcus Irvine, whom she claimed, were the natural children of Harry Crawford. William Irvine and Marcus Irvine were then, and are now, infants. On the 27th day of October, 1908, Harry Crawford executed a deed to Mollie Black and her son, Harry Crawford Black, by which, he conveyed to them, a farm, containing three hundred acres, in Clark county. He instituted a proceeding in the Clark circuit court, for the purpose of adopting William Irvine and Marcus Irvine, as his heirs, at law. On September 23rd, 1909, he executed a deed, by which, he conveyed, to his daughter, Mollie Black, and his grandson, Harry Crawford Black, one-third of seven hundred and eighty-one acres of land, in Madison county, and on the same day, he conveyed two-thirds of the seven hundred and eighty-one acres, in Madison county, to William Irvine and Marcus Irvine. He conveyed to each of them, a certain portion of the lands, but, with the condition, that in the event of the death of either, without issue, before arriving at the age of twenty-one years, the interest, conveyed to him, should pass to the other.

Following the execution of the deeds, on the 30th day of September, 1909, a judgment was rendered, in the proceeding, by Harry Crawford, to adopt the two Irvine children, as his heirs, granting the relief asked.

After the death of Crawford, the lands in Madison county, were divided between Mollie Black and her son, and the two Irvines, and deeds were made, under a judgment of the circuit court, by which the commissioner of the court, conveyed to William Irvine, 281.62 acres of the lands, and to Marcus Irvine, 221.12, acres of the lands. Bettie Irvine was appointed and qualified, as the statutory guardian of William and Marcus Irvine, and as such, had in her hands, a promissory note, for the sum of $8,619.76, of which the interest owned by one of her wards, was, $4,277.40, and the interest owned by the other, was $4,342.36, all of which they received as the heirs, by adoption, of Harry Crawford.

Thereafter, in February, 1915, one Anna Karnes, claiming to be a legitimate daughter of Harry Crawford, instituted suit, in the Clark circuit court, against Mollie Black, Harry Crawford Black, Bettie Irvine, as guardian, and her two wards, William Irvine and Marcus Irvine, and by which, she claimed, that she and Mollie

Black were the only heirs of Harry Crawford, and that as such, each was entitled to one-half of his estate; that the deeds made by Crawford, by which, he had conveyed the lands, previous to his death, were invalid, because they were made at a time, when he was mentally incapable of knowing what he did, or the force or effect of his acts; that he was unduly influenced to secure the decree of the Clark circuit court, by which William and Marcus Irvine were adopted, as his heirs, by the exercise of an undue influence upon him by Bettie Irvine, at a time, when he was decrepit in health, and mentally incapable of knowing the character or quality of his acts, and prayed, that the decree of adoption be declared void, and that the deeds executed to them, by Harry Crawford, be cancelled and declared void, and that the personal property, in the hands of their guardian, and all the real estate of which Harry Crawford died the owner, and that, which he had conveyed to Mollie Black and her son, and to William and Marcus Irvine, be divided, equally, between Mollie Black and herself.

Bettie Irvine, as the guardian for William and Marcus Irvine, contracted with two lawyers, J. M. Stevenson, and J. C. Chenault, to represent her as guardian, and to defend the action for her wards. The contract was reduced to writing and signed by the parties, and by its terms, it was agreed, that the lawyers would attend to the preparation of the defense to the case, and to take all necessary legal steps for the protection of the interests of the wards, in the circuit court, and in the event of an adverse judgment, would prosecute an appeal to the Court of Appeals. A retainer of $100.00 was to be paid, and the lawyers were, also, to be paid fees, to be agreed upon by the parties, and if an agreement could not be made, then, the fees, should be fixed by the judge of the court, or the Madison county court. The lawyers were, also, to be paid their actual expenses incurred in the preparation of the action for trial. On the 4th day of April, 1916, the action ended, by an agreed judgment of the circuit court, by which the action was dismissed and each party was adjudged to pay the costs created by him. Afterward, a motion was made, by the plaintiff, to set aside the judgment, but, this motion was defeated and overruled. Under its terms, the contract of employment of the attorneys, thus ended. Ball v. Lively, 2 J. J. M. 181. Richardson v. Talbott, 2 Bibb, 382.

Stevenson and the guardian, then, agreed upon a fee to be paid to Stevenson of $2,500.00 for his services, but, Chenault and the guardian were unable to agree, and the guardian failed to perform the agreement made with Stevenson.

This action was brought by Stevenson, against William and Marcus Irvine, and Bettie Irvine, as their guardian, to recover against the estates of the infants, and to be paid out of their estate, a fee for his services, in defending the suit of Karnes, against them, in the sum of $2,500.00 and $85.00, his actual expenses, in the preparation of the action for trial. John C. Chenault was made a party defendant, and by a cross-petition, set up a claim for his fees, in the same cause, and his actual expenses. The petition described the real estate and personal property owned by each of the infants, and asserted a lien, thereon, to secure the payment of the fee, sued for, and the cross-petition of Chenault, contained similar averments. The guardian, by answer, put in issue the reasonableness of the amounts of the fees sued for, and denied the accounts for expenses, and thereafter, offered to confess a judgment for $1,250.00 to Stevenson, and a like sum, in favor of the cross-petitioner, Chenault, with certain sums, theretofore paid, to be deducted.

The court, after hearing a large quantity of evidence, fixed the amount of the recovery, in favor of Stevenson, for his services and expenses, at $2,085.00, and in favor of Chenault, the sum of $942.00 for his services and expenses, deducting sums, already paid. It was, further adjudged, that the estate, of each infant, was to pay one-half of the sums for which a recovery was adjudged and that their estates were bound for the payment, and for the purpose of enforcing the payments, that the note, in the hands of the guardian, should be sold, in satisfaction of the judgment, and if from the sale of the note, a sufficient sum to pay the judgment, was not realized, then, a sufficiency of the real estate of the infants to finish satisfaction of the judgments, should be sold. From this judgment, the infants, by their guardian, have appealed to this court, and seek its reversal, upon three grounds:

(1) The court erred in allowing a separate fee, in favor of each plaintiff, instead of allowing one fee, in favor of both plaintiffs.

(2) The fees allowed, were unreasonable in amount and disproportionate to the value of the services rendered.

(3) The manner directed by the court for the enforcement of the judgment, was oppressive, and erroneous.

The grounds of reversal will be considered in their order.

(a) A guardian, in the defense of a suit against his wards, is not confined to the employment of one attorney, but may engage more than one, or more than one partnership of attorneys, if the character of the litigation, the services to be performed, and the interests in controversy, make reasonably necesary, the services of more than one attorney to properly safeguard and protect the interests and rights of the wards, and if the guardian pays the attorneys, for their services rendered, out of the estate of the ward, he will be allowed credits for such payments, in a settlement of his accounts as guardian, if it shall appear, that the services, paid for, were actually performed, under contracts, with the guardian, by persons authorized to practice law in the courts and of recognized skill in the law, and if it shall, further appear, that the services, were reasonably necessary to protect the interest of the infant wards and the sums paid, were not in excess of the reasonable value of the services. Chapline v. Moore, 7 Mon. 150. The credits are allowed, the guardian, because the court should approve, in this particular, when done, what it would have directed to be done, if applied to, beforehand. An infant, however, being unable to contract for himself, it is the duty of the court, to guard his interests, and whether there be one or many lawyers engaged in representing him, his estate should not be required to pay more for legal services, than the reasonable value of the services, reasonably necessary to protect his estate. Section 2030 Ky. Stats. empowers a guardian to prosecute and defend actions for his ward, and it was held, in Sears v. Collie, 148 Ky. 444; and in Wilhelm v. Hendrick, 167 Ky. 219, that the right and duty of a guardian to prosecute and defend actions for his ward, including the right to employ persons, learned in the law and authorized to practice the profession, to assist him in properly protecting the interests of the ward, and to bind the estate of the ward for the payment of a reasonable fee to the lawyer, for his services. For

the defense of the estates of the two wards, in the instant case, the guardian contracted for the services of two attorneys, and after the contract of employment had been performed, she and one of them agreed upon the compensation to be paid to him, but this agreement as to the compensation to be received by this attorney, would not be binding upon the estates of her wards, except in the event, it was shown, that the services claimed to have been rendered by him, were rendered, and that the services were necessary, and the compensation was reasonably proportionate to the value of the services   With the other attorney, the guardian failed to agree upon the sum of his compensation, and did not pay the first, the sum agreed upon.   It does not appear, that the attorneys rendered an equal amount of services, and in such a state of case, it is apparent, that a court of equity, when called upon to determine the allowance to be made for counsel fees, should determine, under all the facts of the case, what amount, the allowance for counsel fees, should be, and then, apportion it between the attorneys, according to what was equitable.   To do this, the court, should have before it, the different attorneys, who rendered services, for which, the allowance is made.   All the parties, in interest, in the case, were brought before the court, and the court, thus, had before it, the entire subject of counsel fees for the infants, in the litigation.   Principles analagous to those, herein expressed, were declared in Fitzpatrick's Committee v. Dundon, 179 Ky. 784, and McKee's Admr. v. Ward, etc., 18 K. L. R. 987, 38 S. W. 704. In those cases, the rights of attorneys, as against the estates of lunatics, were being considered, but, there appears to be no reason, why the same principles should not apply to similar claims against the estate of an infant, who is legally incapacitated to make a contract.

(b)   The entire estate of both the infants, was put in jeopardy by the suit.   If their defense did not prevail, their entire estates, were lost, and the attorneys, would not receive anything for their services.   The lands held by the infants and which were involved, in the litigation were from the sum of $21,000.00 to $25,000.00 in value; their personal estate, involved, exceeded $8,000.00.   The action was pending about thirteen months.   Several able and energetic attorneys, represented the plaintiff, in the action.   For the purpose of taking proof, and cross-examining witnesses, and investigating the facts bearing

upon the controversy, it was necessary for the infants' attorneys, to visit Breathitt county, a number of times, and in doing so, and attending the Clark circuit court in defense of the action, Chenault spent fifty-six days, and in addition, much time and labor, in his office. One hundred and forty-four witnesses were examined and cross-examined. The depositions filled fourteen hundred typewritten pages. One hundred and twenty letters were written. Many days were consumed in consultation with clients and witnesses. In addition to all the depositions, above mentioned, which were taken upon the issue, as to whether the plaintiff was a legitimate daughter of Harry Crawford, the attorneys, for the infants, investigated the facts upon the issues made, as to the competency of Crawford to execute the deeds, sought to be set aside, and prosecute the suit for the adoption of the infants, and whether or not he was moved to execute the deeds or to secure the adoption by any undue influence and prepared the defense upon those issues. That the services for the infants, were necessary to the protection of their estates, there does not seem to be any doubt. That the services were in good faith and faithfully and intelligently rendered, there is no doubt. In an employment for an infant, the law provides, that the charges of an attorney must be reasonable, and in determining the compensation to which he is entitled, the amount and character of the service rendered, the nature and importance of the litigation, the amount and value of the property, in controversy, the skill necessary to properly attend to the business, and the professional standing of the attorney, as well as the time and labor and trouble expended, may be considered. Morehead's Trustee v. Anderson, 125 Ky. 87; Downing v. Mayor, 2 Dana 228. $3,000.00 was not an unreasonable sum to allow for necessary legal services for the infants, in this case, and the court, by its judgment, apportioned $2,000.00 of it to Stevenson and $1,000.00 to Chenault, and neither of them is complaining of the apportionment.

(c) Section 2031 Ky. Stats. authorizes a guardian to sell the personal estate of his ward, and the court might have properly ordered the guardian to sell the personal estate in her hands and pay the debts due the attorneys, instead of directing its commissioner to do so, but the result would have been the same and the same end would

have been accomplished, by indirection, as was ordered by the judgment to be directly done. The right of the guardian to have sold the personal estate in her hands, was not denied by the judgment, and she might have done so, and satisfied the judgment, in which event, no sale could have been made. Subsection 2 of section 489, Civil Code, authorizes a court of equity, to sell the vested interest of an infant in real estate to pay his liability or debt to a creditor. The guardian can not sell the real estate of his ward, nor can the court authorize him to do so, except to pay the debts of the ward's ancestor. It is true, an attorney does not have, by reason of section 107 Ky. Stats. a lien upon property of his client, which he has successfully resisted the taking away, by an adversary claimant, who sues for it.

The attorney has a lien only on property, which his client recovers, in the action. Lytle v. Bach, etc., 29 K. L. R. 424; Thompson v. Thompson, 23 K. L. R. 1535; Forrester v. Howard, 124 Ky. 215; Hatfield v. Richmond, 177 Ky. 183. The attorneys' fees, however, in the instant case, were a liability for which the infant defendants' estates, were bound, and there was no other proper way for the attorneys to subject it to their demands, except by a suit in equity against the guardian and wards, wherein the court in the exercise of its authority, may subject it to the payment of the debts of the ward. Wilhelm v. Hendrick, 167 Ky. 219. This course, was the one, pursued.

The judgment, is therefore, affirmed.