## Robbins, et al. v. Jones' Executor.

(Decided November 13, 1925.)

### Appeal from Graves Circuit Court.

1. Wills—Proper Practice for Attorney Employed to Resist Will Contest to Move for Attorney's Fees.—It is proper practice for an attorney employed by the executor to defend a will contest to make a motion for the allowance of attorney's fees after making such defense.

2. Wills—Attorney, Moving for Allowance of Attorney's Fees for Resisting Will Contest, May Introduce Evidence to Show Amount and Character of Services.—An attorney, moving for allowance of at-

torney's fees for services rendered executor in resisting contest of a will, may introduce evidence to show the amount and character of his services.

3.    Evidence—While Court is Not Bound by the Opinion of Attorneys as to Value of Attorney's Services, it Cannot Disregard Such Evidence Arbitrarily.—While the general rule is that a court is not bound by opinion of attorneys, but may determine for itself what is a reasonable attorney's fee, the mere fact that such evidence is permissible shows that the court cannot disregard such evidence arbitrarily.

4.    Wills—Under Evidence, Held that $6,000.00 Attorney's Fees should have Been Allowed for Services in Resisting Will Contest.—Where contest of will involving an estate of over $100,000 was made four years after will had been admitted to probate, necessitating that attorneys, employed to resist such contest, prepare a defense to every possible point of attack, and in which they were successful, held that $6,000.00 attorney's fees should have been allowed, and court's allowance of $3,500.00 was inadequate.

ROBBINS & ROBBINS, HOLIFIELD, GARDNER & McDONALD, R. E. JOHNSTON, and JOHNSTON & WYMAN for appellants.

W. J. WEBB for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellants, whom we will refer to as the attorneys for the executors, after successfully defending a paper probated as the will of A. M. Jones, deceased, against an attempt by his daughter, the appellee, to break the will, made a motion for an allowance of $6,000.00 for their services. The court allowed them $3,500.00, and refused to allow any more. The attorneys for the executors have appealed.

The uncontroverted facts in regard to the services of appellants in the case are briefly these: The decedent, A. M. Jones, was born in Shelby county, Kentucky, was in business in the city of Louisville for a short while in his early youth, afterwards moved to western Kentucky, was connected with various business enterprises and lived in various places in western Kentucky, afterwards coming to Graves county, where rather late in life he married. His wife lived until about ten years before his death, and left one daughter as the result of this marriage, Marion Jones, who afterwards married Mr. Paul Davis. After his wife's death, Jones spent most of the

time in the state of Florida, especially during the winter months.

In 1918 he executed a will, by the terms of which he gave to his daughter, Marion Jones, in round figures, $100,000.00, but provided it should be held in trust by his executors and trustees and only the profits and income from the estate should be used by her during her life, and providing that it should be held in trust for her children twenty years after her death, and that her children were not to have this estate, and the property was not to become her children's in fee until twenty years after her death, and if there were no children, the estate was to go to certain designated devisees. He made certain specific bequests to his relatives and friends out of the remaining part of his property, which amounted to about forty or fifty thousand dollars, and then provided that his sisters and nephews and nieces should receive the remainder. He nominated his own executors, to-wit, I. R. Randolph, N. A. Hale and Jerry B. Mason.

On Februray 22, 1920, A. M. Jones died, while in Jacksonville, Florida, although his legal residence was in Graves county, Kentucky. On March 15, 1920, his will, which had been executed as set forth above, was duly probated in the Graves circuit court without objection. Afterwards his daughter married. From that time until September 15, 1923, his daughter, Marion Jones Davis, accepted the benefits under the will, amounting to a considerable sum, and took no step to contest or attack the validity of the will. A suit was filed in the Graves circuit court during the time to construe said will, which became necessary because some of the property that Jones had willed to his daughter had been sold by him after his will was made, and she was claiming the proceeds of the sale as a part of her estate. She was a party to this suit and received the benefits of this construction. In that suit a petition was filed which set forth the will and the judgment of the court construing the will adjudged it to be his last will and testament, and ordered the executors to distribute his estate in accordance with the will. All this time, Marion Jones Davis made no move to contest this will, but on September 15, 1923, which was almost four years after the will had been probated, she filed in the Graves circuit court an appeal from the order of the county court probating same. Aside from stating that A. M. Jones died a resident of Graves county, that

the county court had probated this paper as his will, giving the names of the parties, explaining why they were parties, and where they were to be found, the statement on the appeal attacking this paper is:

"The plaintiffs and appellants say that said paper is not the last will and testament of the said A. M. Jones."

The executors were thus given but little information about the nature of the attack, hence had to prepare to defend the will at every possible point of attack, and the appellants here were the attorneys whom the executors employed for that purpose. These attorneys prepared a very carefully drawn and most comprehensive answer to this attack, none of which was surplusage and all of which was very material to the defense of the paper propounded, and which answer makes up fifty-seven pages of the record before us. This answer was, in the main, a plea of ratification and estoppel. It was based on the case of Corprew v. Corprew, 84 Va. 599, 5 S. E. 798. They at once prepared themselves to prove, and did prove to the satisfaction of the jury:

(1) That the paper propounded was signed as required by law.

(2) That A. M. Jones had then testamentary capacity.

(3) That he was free from undue influence.

(4) That he was free from insane delusions.

At the time this attack was made, Mr. Jones had been dead nearly four years, and the attorneys for the executors had to ascertain the various places where he had lived, how he had made his money, whom he had met and transacted business with about the time of the execution of this paper and for a reasonable period before that time and subsequent to it. Unable to know from this statement, upon what ground the will would be attacked, they had to ascertain what witnesses would be offered by the contestant; they had to learn as far as they could, what these witnesses would say; they had to prepare themselves to cross-examine these witnesses, and to rebut their testimony. In all of this, they were entirely successful. After they had succeeded, they then made this motion for attorneys' fee, a practice approved by this court in the case of McMillen's Exrs. v. McElroy, 186

Ky. 644, 217 S. W. 927. They introduced evidence to show the amount and character of their services, which was permissible under Irvine v. Stevenson, 183 Ky. 305, 209 S. W. 7, and Morehead's Trustee v. Anderson, 125 Ky. 77, 100 S. W. 340. They showed the time and trouble involved, the nature and importance of the litigation. They showed that this estate amounted to more than $100,000.00, and that it required and that they gave to the establishment of this will, skill and experience of the very highest order. They established by proof, the high professional character and standing of the attorneys, and that they were successful. There is in the record before us, the evidence of twelve eminent lawyers, who testified in the case, and not one of them fixed the fee for the services rendered at less than $6,000.00. Two of them fixed it at $7,500.00; and two at $7,000.00. One witness was introduced by the appellee, and fixed the fee at $2,000.00. He is a reputable and distinguished attorney, but he represented the losing plaintiff, and being human, could not avoid being influenced by his client's wishes.

In the case of Marble, et al v. Husbands, 185 Ky. 605, 115 S. W. 435, this court said:

> "It is likewise the rule that while evidence relative to fees of counsel may be admitted for the purpose of informing the court as to what is just and reasonable under the circumstances, the court is not bound by the opinions of attorneys, but may review the character, extent and results of the legal services performed, and determine for itself what is a reasonable fee."

While that is the rule, that does not mean that the court can arbitrarily disregard the evidence offered, refuse to be informed by the evidence, and in spite of it, fix the fee at any sum he chooses. The court has a discretion. That is true; but it is permissible to introduce evidence to show the value of the services and the fact that the introduction of evidence is permissible, shows that that evidence cannot be disregarded.

Considerable reliance is placed upon the case of Marble v. Husbands, *supra,* in which an allowance of $3,600.00 for legal services rendered was approved, where about $17,000.00 was involved.

Appellee also relies upon the case of May v. Walter's Exrs., 149 Ky. 749, 149 S. W. 1014, but that estate amounted to only $53,522.00, and this court approved an allowance of $3,500.00 in a case where the work done seems not to have been anything like as extensive as here, and she cites the case of Stockholders of First State Bank v. First State Bank's Receivers, 159 Ky. 484, 167 S. W. 678, in which this court approved an attorney's fee of $2,500.00 in a case in which $33,533.49 was involved. There is some dispute about what is in controversy here. The appellee suggests that there is only the difference between the $90,000.00 or $100,000.00 which she insists should come to her now as the child and legal heir of her father, and the value of the use of that sum during her life. So far as she is concerned, that is true, but so far as the testator (the man of whose energy, efforts and ability this estate is the fruition) is concerned, the entire estate is in controversy. The same is true as to any children born of the appellee who may survive her, and as to the beneficiaries who are to receive this estate if appellee leave no issue.

In the case of Axton v. Vance, 207 Ky. 580, 269 S. W. 534, this court set out at considerable length the things to be considered in fixing the value of an attorney's services, and when these services are measured by the rule there announced, the allowance made falls short of being adequate.

The members of this court are not unaware of the change in the purchasing power of money. A few years ago a judgment for $50.00 was considered of sufficient importance to be appealed to this court, but now the minimum is $500.00. A salary upon which a man could then comfortably maintain and educate his children and save a little for his old age, will not now, with the utmost frugality, suffice for him to live in decency and educate his family. Shoes that could be bought for $5.00 cost $12.00 or $15.00 now. A lawyer could buy a copy of our published statutes for $6.00, and one now costs five times that sum. A suit of clothes that cost $40.00 is $120.00 now. As good board could be had then for $20.00 as now costs $50.00. Everything else has changed in proportion. The opinions of this court then written are to be read in the light of the changing times and applied with a regard for the new conditions. All things considered, the fee asked is reasonable and should have been allowed.

The judgment is reversed, and the cause is remanded with directions to allow the attorneys for the executors the full amount asked for, and this shall be apportioned upon the same basis used before.

Judgment reversed. The whole court sitting with the exception of Judge Thomas, who declined to sit in this case.