# Baxter v. Hubbard.

(Decided February 23, 1932.)

GARNETT & VAN WINKLE for appellant.

HOWARD B. LEE for appellee.

752

Upon the verdict of a jury, the appellee, Eugene Hubbard, has been awarded a judgment against the appellant, W. E. Baxter, for a $4,000 attorney's fee. The issues related to the terms of the contract of employment respecting compensation and the reasonable worth of the services should the jury sustain the claims of the plaintiff, now appellee. The appellant submits that he was entitled to a peremptory instruction, and that the verdict is excessive. There is also raised the question of error in permitting the submission of a hypothetical question containing an item of service, or what is in reality an immaterial incident occurring during the dissolution of the relationship of the parties, the evidence of the transaction being held incompetent and rejected. It is also claimed that an offered instruction was improperly re-- fused.

The appellant owned a tract of land lying between Western Boulevard and the Ohio river in Louisville. For the purpose of condemnation, the city arbitrarily divided it into two parcels, one containing 24.2 acres, and the other 3.7 acres, and filed separate condemnation proceedings therefor. Dr. Baxter vigorously objected to having any of his property taken from him. Accordingly, he retained the Honorable Fred Forcht to oppose the condemnation and to deny the power of the city to condemn it. The case going against him on the pleadings, appellant refused to allow his attorney to proceed in an effort to obtain as large a sum in compensation as he could. Mr. Forcht retired or was discharged from the case. That was in July, 1926. About three months later, according to the contention of the appellant, he employed the appellee in the case upon a contingent fee basis, which was that, unless he should prevent the condemnation of the property, he was to receive nothing for his services, while, if he succeeded in doing so, he (the client) was to fix the amount of the fee, which sum would be wholly acceptable to the lawyer. On the other hand, the appellee maintains that such was not the contract, and that there was no agreement or understanding as to the fee, except that it should be reasonable.

There is no merit in the claim that a peremptory instruction should have been given in favor of the appel-

lant. Mr. Hubbard clearly and explicitly testified to the terms of employment as above outlined. Dr. Baxter likewise gave his version of the contract as stated. He is supported by two friends, Lynch and Arnold, who seem to be his customary witnesses, to the effect that Mr. Hubbard had agreed in their presence that the contract was as he contended. Those admissions are denied by the appellee. While Mr. Hubbard had no corroborating witness, the very nature and unusual character of the terms asserted by appellant raise a doubt that a lawyer would make such a contract in a case of this kind, especially under the circumstances surrounding the employment. Moreover, some men may doubt that the appellant would have allowed so good a proposition to remain open to controversy instead of having it reduced to writing. Dr. Baxter says he did not have that done because he did not think that one should "look a gift horse in the mouth."

Nor can we hold tenable the argument that a directed verdict should have been awarded, or even the offered instruction, premised upon disputed evidence, given, because of an abandonment of the case by the attorney. The evidence upon which the argument is based is this: After the verdict in the condemnation proceedings was rendered, a taxpayers' suit was prepared and filed by appellee in the name of one of Dr. Baxter's friends to enjoin the city from paying the money into court and taking the land—a continuation of the fight to prevent the condemnation through a collateral proceeding. The city offered to exchange land, but Dr. Baxter declined. Then it was, according to his evidence, Mr. Hubbard told him that he would quit the case and would not proceed with an appeal from the judgment unless he executed a written contract to pay him five per cent of the total damages awarded, or about $2,500. Declaring that that was what Mr. Forcht wanted, he refused to comply, and insisted that that was not the contract of employment. As he left the building, he met with his friend Lynch and told him of Mr. Hubbard's demand. Lynch went right on up to see him, as he says, in the interest of Dr. Baxter. He thought that perhaps he could influence Mr. Hubbard to go on with the case, and assured him that Dr. Baxter would do what was right and live up to his agreement, but he still insisted on a written contract.

Mr. Hubbard's version as to the severance is quite different. He testified that, after the verdict and further

steps were taken, as related, Dr. Baxter brought Lynch to his office and stated that he had high-blood pressure, and was liable to die at any time, and therefore wanted Lynch to hear what he said, which was that he wanted Hubbard paid for what he did for him, and he wanted Lynch, in the event anything happened to him, to tell his brother and nephew that "when the thing is through I am going to set the fee." Later he brought in Arnold and said about the same thing. The next time he came the attorney asked his client why he had done that, and he replied merely that he was sick and wanted him paid. These incidents suggested to Mr. Hubbard the wisdom of having a definite agreement. When he told Dr. Baxter that they should have such an understanding, he said, "You are just like Forcht," and stated that, when Mr. Forcht had said he wanted a five per cent fee, the doctor told him he would get another lawyer. He then requested Mr. Hubbard to give him the papers in the case, and declared that he was going to fix the fee when he got through, and that he was not through yet. Later, Judge William H. Field called and informed him that Dr. Baxter had conferred with him with reference to his employment in the case. Mr. Hubbard thereupon had his name stricken from the record as attorney. It should be said that, after withdrawing from the case, he turned over to his successor his private file and treated him and his former client with the utmost fairness, courtesy and consideration.

Counsel for appellant cites 6 C. J. 673, in support of their argument respecting the abandonment of the employment and the instructons based upon it. The authority cited, however, is only to the effect that, when an attorney has received a retainer fee to conduct legal proceedings, he enters into an entire contract to carry it on to a conclusion, and, if he abandons the relation without justifiable cause or the consent of his client, he forfeits his right of compensation. That rule cannot be questioned. Thornton on Attorneys at Law, Secs. 139, 558. It is the further law, as well, that where an attorney agrees to render certain services for a stipulated fee, and performance on his part is a condition precedent to payment, his failure without justification to perform the service undertaken will be deemed a forfeiture of his right to compensation under the contract; but where he is justified in withdrawing, he is entitled to a reasonable

fee for the services actually rendered. Thornton on Attorneys, Sec. 453; Henry v. Vance, 111 Ky. 72, 63 S. W. 273, 23 Ky. Law Rep. 491. There can be no dispute either that a discharge by the client does not release him from liability for compensation. Id.; Gordon v. Morrow, 186 Ky. 713, 218 S. W. 258. The answer in this case states the client agreed to the withdrawal of counsel, and agreed to release and discharge him from proceeding further. But no retainer was paid and no fee stipulated in this case. The compensation was left undetermined. In 6 C. J. 674, immediately following the paragraph relied on by appellant, we read: "An attorney may for lawful cause and on reasonable notice withdraw from a suit at any stage in the proceeding." Continuing it is truly said that in the nature of things no general rule or definition can be given as to what is a justifiable cause. One of the grounds or causes listed as being held sufficient is that the attorney may refuse to proceed with the case, unless his proper fees are paid or secured after request.

The essence of the evidence of both parties is that such a request and failure to fix any fee caused the dissolution; the client claiming the attorney quit the case because he would not agree and the attorney asserting the client discharged him because of his request. In either event, the appellant became liable for the compensation, unless the terms of the employment were as he claimed. Even then, the attorney having succeeded in indirectly defeating condemnation of a part of the property, he was entitled at least to have the client name a fee within reason, and he refused to do so. The case was submitted on the issues as to the terms of the contract of employment. If the jury sustained the defendant's contentions, they were instructed to find nothing for the plaintiff. It seems to us they were more favorable to the defendant than the case warranted.

On the proposition that the fee is excessive, it may be said that the appellee took hold of the case where his predecessor left off. He continued the effort to prevent condemnation by filing additional pleas, and, when they were overruled, he set about to secure as large a sum for the property as possible. It was very much to the interest of his client to postpone the trial until the summertime, when the property would appear at its best. Pursuing that strategy, over the vigorous opposition of the city, he

obtained two continuances, so that the trial took place in June almost a year from the time of the attorney's employment. The preparation of the case required interviewing many prospective witnesses, as there was a sharp issue whether the river land could ever be used as a wharf, the purpose for which condemned, and the good faith of the city in resting its case upon that proposed use was brought into question. The matter of value was, of course, an important one. The evidence of steamboat pilots, government engineers, real estate men, shippers, several former and present city officers, and many other witnesses was obtained. The trial lasted six days, during which the plaintiff presented forty witnesses. Some nice questions of law were also raised. After the verdict, counsel prepared and argued the motion and grounds for a new trial, and had the record for an appeal perfected. A reference to the opinion delivered in that case will indicate the nature of the law and facts involved. Baxter v. City of Louisville, 224 Ky. 604, 6 S. W. (2d) 1074.

By able lawyers the city presented a formidable opposition, which required extraordinary skill and ability, as well as much labor on the part of counsel for Dr. Baxter. The attorney who represented the city testified as to the character of service rendered by Mr. Hubbard, and pays this tribute to his adversary:

"I have tried a number of cases but this was one of the most bitterly fought cases I have ever been in."

The result of the trial was that the jury awarded damages for one tract of $12,123.50, and for the other, $40,900. The property involved in the litigation may therefore be said to be worth $53,023.50, although it can hardly be said that that was the value of the subject-matter in controversy, for, of course, had no defense been made in the condemnation suits, something must have been allowed for the property. The main legal issue involved an intangible and immeasurable value represented by the persistent purpose of the client to keep his property and defeat the condemnation in all events. The city declined to take the more valuable tract because of the large amount awarded for it. As to it, counsel succeeded in accomplishing indirectly what he strove to accomplish

directly, although perhaps its value was affected by the division.

Several eminent lawyers testified that in their opinions a reasonable fee for the plaintiff would be from $5,000 to $7,500. No evidence of this character was introduced by the defendant; nor was any effort made to disprove the plaintiff's evidence of the extent or nature of the services rendered or to minimize them. However, it is argued here that the amount involved was only $12,-123.50 and therefore that the fee is equivalent to $33^1/_3$ per cent of the sum recovered. And it is suggested that the time devoted to the case was only the six days consumed in the trial. That is hardly a fair statement. Every lawyer knows that in a case of this kind the major work is done out of the courtroom. As we have already indicated, the period covered by this employment was a year. The client did not deny that he came to his attorney's office almost every day, sometimes twice a day, and that he required his personal attention, even objecting to the use of his firm's name on the pleadings. Neither did he deny that he had impatiently expressed the idea that by the terms of his contract of employment he had purchased the entire time of the lawyer. We suppose that every experienced lawyer has had clients who insisted upon recognition of their own views as to the management of the cases, and which sometimes are impossible or impracticable. Nevertheless, they had to be listened to with patience and consideration, and the futility or impracticability of their suggestions carefully explained and often tactfully disregarded. The time thus consumed and the burden thereby added ought to be regarded in fixing the attorney's compensation.

In expressing their opinions of the value of appellee's services, the witnesses stated that they had given consideration to the known ability, professional standing, and reputation of the plaintiff—itself a pretty good criterion of ability, fidelity, and worthiness of confidence—the extent of the services, the labor and time necessarily expended in preparation and trial of the case, the value of the property affected or involved, the nature and importance of the litigation, the responsibility imposed, the results procured, and the standard of fees at the local bar. Such are the elements usually recognized. Irvine v. Stevenson, 183 Ky. 305, 209 S. W. 7; Axton v. Vance 207 Ky. 580, 269 S. W. 534.

We read in the Scriptures, "The laborer is worthy of his hire." That declaration was made by the Master concerning His missionaries. The truism is no less applicable to lawyers than to preachers or to "The Man With the Hoe." Back of the more or less tangible and measurable listed elements and activities, there are years of study in preparation and training for efficient service. Often that has involved the sacrifice of many pleasures of an easier life; maybe it was at the expense of some of the necessities. There must be, as well, a development of character that the lawyer may be esteemed worthy of the confidence of men, for integrity is a very important cornerstone in the building of a lawyer. He must be prepared to have placed upon his shoulders and to carry burdens which his clients cannot or will not bear. Heavy responsibilities are imposed upon him, and sacred confidences reposed in him. He must show himself worthy of those trusts. Earnest devotion of mind and heart and the complete enlistment of all his talents to his client's cause are given by the sincere, honest, and upright advocate. In the preparation of his case he must be able to grasp the details, however intricate, and reach a full and clear understanding of the controlling facts and the applicable law. Many times, as in the principal instant case, these involve the examination and elimination of numerous prospective witnesses, the careful study of conditions, and the exhaustive research of the law. Familiarity with multitudinous affairs and subjects, talent, learning, originality, ingenuity, strategy, courage, resourcefulness, reflection, intelligent research, and continuous toil enter into a lawyer's service. Lord Eldon truly said: "To succeed as a lawyer a man must work like a horse and live like a hermit." There is no profession in the whole domain of social life that demands more than that of a lawyer.

We may go further, for all of the preparation is focused towards the actual trial. Of interest will be found the philosophic opinion of Irwin v. Swinney (D. C.), 45 F. (2d) 890, 894, concerning the fixing of attorney's fees in a case involving a trust fund of several million dollars in which consideration was given to the fact that there was absent "that concern and anxiety which inevitably attend a jury trial about which always hover the specters of ignorance, prejudice, and human frailty." In truth, the immediate contest climaxes the expended efforts, and the responsibility, uncertainty, anxiety, and

tension, no less than the actual labor in the forum, all take their vicarious toll of mind and body. The lawyer is worthy of his hire.

A jury of appellant's fellow laymen has said that $4,000 was reasonable compensation for the legal services received by him in his litigation. This sum is $1,000 less than the lowest amount considered reasonable by the lawyer witnesses. He ought not to complain. He was served and served well. It is true that it has been often written that evidence of attorneys as to the reasonableness of fees will not be accepted as conclusive and that the court would exercise its prerogative of fixing such fees as in its judgment seemed proper. Erdman's Admr. v. Erdman's Admr., 231 Ky. 219, 21 S. W. (2d) 258. And, of course, such evidence is not conclusive on the jury. Morehead's trustee v. Anderson, 125 Ky. 77, 100 S. W. 340, 30 Ky. Law Rep 1137. When the fee is fixed by a jury, the judgment is to be measured by the general rule pertaining to verdicts being palpably against the evidence. That rule would have to be stretched beyond the breaking point were we to endeavor to make an affirmative application here. The verdict is fully sustained by the evidence.

Coming now to consider the claim of the improper admission of evidence. The hypothetical question reviewing the services of plaintiff which was submitted to attorneys testifying in the case and upon which they based their opinions as to a reasonable fee contained a statement, in substance, that, after Mr. Hubbard had withdrawn from the case and had written Dr. Baxter suggesting that they should agree upon the fee without litigation, Judge W. H. Field called on him and reported that he had been employed by the doctor; that Mr. Hubbard told him he would be delighted to do anything he could to assist him; that Judge Field assured him that Dr. Baxter did not want a suit about the matter; and that he would be paid for his services when the cases had been passed upon by the Court of Appeals, and for that reason he had waited until then to bring the suit. When Mr. Hubbard related this incident on the witness stand, the court sustained an objection to the evidence, and it was agreed by his counsel that it should be stricken. The result was that in the recitation of facts covering a dozen pages this item did not have evidence to support it, and thus to that very minor and immaterial

extent the question offended the rule respecting the substance of such interrogatories. See Axton v. Vance, supra. But we cannot see how the inclusion of the incident in the hypothetical question could have affected the verdict. The witnesses based their opinions on the recitation of services rendered and not on any statement of the defendant's agent to plaintiff that he would be compensated.

Perceiving no reason for reversing the judgment, it is affirmed.

DIETZMAN, C. J., not sitting.