## Kentucky & West Virginia Power Co. v. Howes.

(Decided Nov. 29, 1932.)

HARMAN, FRANCIS & HOBSON and A. J. MAY for appellant. FRED HOWES and M. O. WHEELER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming in part and Reversing in part.

Under our view of this case, it becomes necessary to consider only the question whether a layman was a competent witness to express an opinion on the value of an attorney's services.

The suit is by the appellee, Honorable Fred Howes, to recover $9,500 compensation for professional services rendered the appellant. It was filed as a common-law action, and upon the issues joined a jury returned a verdict in his favor for $1,500. His motion for a new trial was sustained and the verdict set aside. Later his motion to transfer the case to the equity docket was sustained. The regular judge felt himself disqualified for some reason and a special judge was designated to try the case. He set aside the order transferring the case and put it back on the ordinary docket. It was

not then tried, and later another special judge was designated. He transferred the case to equity and referred it to the master commissioner to take proof and report. The commissioner reported a fee of $5,000 as being reasonable. On exceptions the court rendered a judgment for $3,250 for the plaintiff. There is a direct and cross appeal from that judgment.

The facts are practically without dispute. In October, 1926, the appellant had purchased the properties and franchises of the Prestonsburg Electric Light Company and of the Paintsville Water & Light Company. Mr. Howes had rendered legal services to the company in that year for which he was paid. The suit covers services in 1927. In general, they consisted of procuring new franchise in Paintsville for furnishing electricity and water both to the municipality and the citizens; the defeat of an effort to dissolve the charter of West Van Lear, a village adjacent to or near Paintsville, which might have seriously affected the company's interests; the adjustment of some matters of taxation with the taxing authorities and the predecessor companies; also services in relation to a franchise in the adjoining village or territory of Bridgeford, Johnson county. There is no denial that in each matter the company's interests were well and successfully represented. The only issue was as to what was a reasonable compensation.

Laying out of our view the questions as to whether the court should have tried the case as in equity under the provisions of subsection 4 of section 10, Civil Code of Practice, and as to the reasonableness of the fee of $3,250 adjudged, we turn to the jury trial.

There can be no doubt about the propriety of submitting the case to a jury, for it was brought as an action at law and involved a legal issue. No attempt was made to have the case tried by the judge alone until after the verdict had been set aside. The company preserved its right to a review of the action of the trial court in setting aside the verdict by reserving proper exceptions and by moving to have that verdict substituted as and for the judgment of the court at the final determination. That motion was overruled and a bill of exceptions covering the jury trial has been properly presented on this appeal. It seems that the only ground upon which the court sustained the motion for

a new trial was the admission of the testimony of N. C. Funk, general manager for the appellant in the Eastern section of Kentucky, as to the value of the attorney's services.

Mr. Funk gave his experience as a construction and electrical engineer and as manager of utility plants, and testified as to the value of the company's properties in connection with which the attorney had rendered the services and of which the witness had been general manager during 1927. He further testified that he had had at least fifteen years' experience in employing and dealing with able lawyers of good standing, who had rendered services like those of Mr. Howes, by engaging and paying them therefor. The localities were similar. He particularly mentioned several reputable lawyers in Ashland, Catlettsburg, Hazard, and Whitesburg, whose fees he had approved for payment. Based upon that experience and qualification, the witness was permitted to testify that in his judgment Mr. Howes's services were worth from $285 to $400. Objections to all of this testimony were overruled, as was also an objection to evidence on redirect examination as to what his company had paid another attorney in Ashland for similar services.

It is laid down in the text-books as an abstract proposition that a layman is not a competent witness to testify as to the value of a lawyer's professional services and that such opinions may be given only by members of the profession. Wigmore, sec. 715; Chamberlayne on Evidence, sec. 2163; Jones, Commentary on Evidence, sec. 1366; 7 C. J. 763; 22 C. J. 700; Thornton on Attorneys at Law, sec. 547. But, as it is stated, it has also been held that any one familiar with the customary and usual charges of lawyers for services similar to those for which compensation is sought, and in the locality where rendered, may be qualified by reason of their experience and knowledge to express an opinion of value, even though they be not members of the profession. An examination of the cases cited in support of the broad statements of inadmissibility discloses that in some of them the witnesses were lacking in qualifications necessary to enable them to have knowledge of the subject, and it seems to us that those decisions might well have been rested on that basis alone.

The first case in this country that we have noted, and one which became the foundation of all subsequent opinions, is Hart v. Vidal, 6 Cal. 56, decided in 1856. It simply states, without discussion and without citation of authority, that a witness who was a layman was not competent because "he was not a lawyer, and therefore not such an expert as the rules of evidence admit." Other cases directly so holding and citing the California case are Kappler v. Storn, 54 Okla. 493, 153 P. 1142; Howell v. Smith, 108 Mich. 350, 66 N. W. 218; Coco-Cola v. Moore (C. C. A.) 256 F. 640; Semble: Baxter v. Szucs, 248 Mich. 672, 227 N. W. 666. In Fry v. Estes, 52 Mo. App. 1, the testimony of two witnesses as to the value of an attorney's services was held improperly admitted, because "it was not shown that they were attorneys-at-law, or in any way qualified to speak on the subject." There are other cases cited in some of the texts, but they do not seem to be sufficiently in point to regard as authoritative.

We turn to those which support the proposition that a layman properly qualified is competent to express an opinion as to the value of a lawyer's services.

In Hand v. Church, 39 Hun (N. Y.) 303, the defendant in an action to recover an attorney's fee was permitted to express an opinion as to the fair value of the services. He had once been admitted to the bar but did not regard himself as a practicing lawyer. For thirty years, for himself and as agent of others, he had been engaged in upward of two thousand cases of the character in which the attorney had been employed. He had acquired knowledge of fees paid counsel and had "a pretty good knowledge of the subject." Said the court:

"The competency of the witness did not necessarily depend upon his being a lawyer, but upon the fact whether he had been so instructed by experience as to have peculiar sources of knowledge to guide him upon the subject of the value of these professional services, fitting him to answer with more accuracy than others. [Citations.] Other persons besides professional men have knowledge of the value of professional services. (Field, J., in Head v. Hargrave, 105 U. S. 45, 49 [26 L. Ed. 1028].) We do not see why those who often procure and pay for such services should not acquire by ex-

perience considerable knowledge of their value. It may not be perfect, but the courts do not insist upon the highest knowledge as the test of competency."

The Kansas court followed that case in Gregory Grocery Company v. Beaton, 10 Kan. App. 256, 62 P. 732, and held that a person not a lawyer may testify as to the value of the services of an attorney if he shows that he is acquainted with it.

In Murphree v. Anderson, 92 Kan. 370, 140 P. 880, 882, that court went pretty far in holding that in an action to recover damages, including attorneys' fees for defending a malicious attachment, the plaintiff, who was a farmer, was competent to testify as to the reasonable value of his attorney's fees, although the decision appears to have really been rested on the ground that the admission of the testimony was not prejudicial since the witness seemed to have had a fair opinion as to what the services were reasonably worth. Said the court:

"The fact that the plaintiff is a farmer would not prevent him from having some notion as to the value of attorney's fees, especially where he had participated in as much litigation as the plaintiff has, all within a period of two years."

In McNiel v. Davidson, 37 Ind. 336, it is said:

"We do not regard the question as to the value of services by an attorney as one of science or skill for the testimony of experts. Any one who knows what the customary and usual charges of lawyers are can testify."

Rather peculiarly, the circuit judge of twelve years' experience who had tried the principal case stated that he could not say what would be a reasonable fee on account of the length of time since he had practiced, and it was held that the trial court properly sustained an objection to the question which asked him for an expression of opinion.

In Pelzer v. Ragsdale, 105 S. C. 201, 89 S. E. 705, 706, it is said, although apparently dictum, that:

"In fixing the fee in any case, it should not be fixed by lawyers alone and their testimony, but any business man, in whatever walk of life, who has had experience in paying fees for himself or represen-

tative for others, has the right to give his evidence as to what is a reasonable and proper fee.''

Examining our own decisions, we do not find that this court has passed upon the question directly. Treating the subject of expert testimony generally, in Ford v. Providence Coal Company, 124 Ky. 517, 99 S. W. 609, 611, 30 Ky. Law Rep. 698, holding it to have been proper to permit an expert familiar with the operations of a complicated machine to testify regarding the need of certain safeguards, the opinion quotes the definition of an ''expert'' as given in 12 Am. & Eng. Encly. of Law, 424, as: ''One possessing, in regard to a particular subject or department of human activity, knowledge not acquired by ordinary persons.'' And also that of a ''scientific writer'' as: ''An expert is one who can see all sides of a subject. This knowledge may be derived from experience, or from study and direct mental application.'' Continuing, it is said by the court:

> ''Nor is it required that the expert testimony should be the most perfect obtainable, nor that the witness should at the time be actively engaged in the occupation concerning whose lore he has been called to testify, though long abandonment thereof may be sufficient ground for exclusion.''

While we have some cases denying the competency of certain witnesses concerning scientific or engineering subjects because of a lack of knowledge, such as Midkiff v. Carter, 188 Ky. 339, 222 S. W. 92, yet we have the very familiar rule in will cases of permitting laymen who have observed testator's conduct and have had an opportunity by acquaintance, association, or observation to form an opinion to express their opinion concerning his mental capacity. We also hold that a witness familiar with one's handwriting and signature may express an opinion as to the genuineness of his signature although he is not an expert. Pioneer Coal Company v. Polly, 208 Ky. 548, 271 S. W. 692.

In Daniel v. Bullitt County, 115 Ky. 741, 74 S. W. 1057, 25 Ky. Law Rep. 159, it was held in a suit to determine a reasonable salary for a county judge that witnesses who show themselves sufficiently acquainted with the duties of the office to testify understandingly in regard thereto should be permitted to testify as to

the value of his services. There are some general statements in two cases involving attorneys' fees which indicate a disposition to look at this subject in a practical and broad way. Thus, in Gaither v. Dougherty (Ky.) 38 S. W. 2, 3, 18 Ky. Law Rep. 709, it is said:

"The only issue was what was a reasonable fee for the services rendered on the California trip; and this might have been proved by persons familiar with the value of such services."

And in Morehead's Trustee v. Anderson, 125 Ky. 77, 100 S. W. 340, 342, 30 Ky. Law Rep. 1137, while observing that the matter was one largely of expert knowledge and that no persons are so well qualified to express an opinion concerning the value of legal services as are regular practitioners, yet it is pointed out that their opinions are not conclusive, and that the jury is not bound to return a verdict for the sum fixed by expert witnesses as a reasonable charge, but may weigh and consider their testimony in connection with other evidence in reaching a conclusion, "and have also the right to draw on their own experience and knowledge of the subject gathered from general information, common knowledge, and other sources."

The value of services for purposes of compensation, where there is no specific standard recognized, must of necessity be measured by estimate and the "rule of thumb." What is reasonable and fair, in the absence of a definite criterion, must depend upon the opinions or judgments of those who are qualified to speak, for the elements entering into the lawyer's services are many and peculiar. Baxter v. Hubbard, 242 Ky. 751, 47 S. W. (2d) 743.

It seems illogical to say that a professional qualification, however limited (as that of a mere law license), ipso facto renders a man competent as a witness to express an opinion, while experimental qualification, however great (as that of a business man who has paid many law fees), will not permit him to express an opinion on that subject. After all, the admission of opinion evidence of this character rests upon the ground that the witness' peculiar training, experience, and knowledge will be an aid to the court or jury in determining the question at issue. Greenleaf, secs. 430g, 441; Wigmore, sec. 1923.

In the instant case the witness was the manager of the company and, in a way, occupied the role of the defendant. He had qualified as one having knowledge of the particular kind of services rendered by the plaintiff. As stated in appellee's brief, the major item of his work was in procuring the new franchises at Paintsville, which involved the creation through the press of a favorable attitude of the citizens and his appearance several times before the council in regard to the advantages accruing to all concerned; the old franchise having only a short time to run. With perhaps the exception of filing an intervening petition in the suit seeking to dissolve the town of West Van Lear, the services were not purely or strictly legal. They were such as one not versed in the law might have rendered. Another thing which should be taken into consideration is that the jury rejected the small value placed upon the services by the witness and found for the plaintiff four or five times as much. There were a number of lawyer witnesses who did express opinions as to the value.

We need not express our views as to the rule of evidence considered apart from the application to the particular state of facts. In our decision we go no further than to say that since the services of the attorney were not strictly of a legal nature, but in the more important aspect were of a special character, and since the witness by reason of his experience and knowledge showed a qualification to express an opinion as to the reasonable value of services of that character, it was proper to permit him to testify.

On cross-examination counsel for the plaintiff inquired of the witness as to what other attorneys his company had employed during the year and elicited testimony as to what had been paid one of them. On redirect examination the witness stated what had been paid another lawyer, and it is of this the appellant complains. If it be incompetent (see 6 C. J. 762), it could not have been prejudicial.

Our conclusion is that the court ruled correctly in the first instance in admitting the evidence and should not have set aside the verdict of the jury. It follows, therefore, that the motion of the defendant to substitute that verdict as and for the judgment in the case should have been sustained.

As stated, it becomes unnecessary to consider other questions raised.

Judgment reversed on the direct appeal for consistent proceedings. It is affirmed on the cross-appeal.