## Martin et al. v. Martin's Ex'rs et al.

June 24, 1949.

Rehearing denied October 28, 1949.

Hubert Meredith for appellants.

Woodward, Dawson & Bartlett for appellees.

JUDGE HELM—Affirming.

This is an appeal from a judgment awarding the law firm of Woodward, Dawson & Bartlett $15,000 as attorneys' fee.

On March 7, 1946, Charles E. Martin died a resident of Greenville, Muhlenberg county. On November 12, 1941, Mr. Martin executed his last will, which was probated on March 9, 1946. Mr. Martin left surviving him his wife, Hessie D. Martin, and Benjamin C. Martin, Lorene Martin Wickliffe and Earl Martin, children of a former marriage, and Henson E. Martin and George

Martin, children of Hessie D. Martin. He left an estate of residences, farms, livestock, coal lands, stocks, shares, bonds, securities, cash and other personal property of the value of about $750,000.

By his will, Mr. Martin nominated Benjamin C. Martin and Henson E. Martin executors and trustees of his estate, requesting that no bond be required of them. After probation of the will, they were duly appointed executors and trustees of his estate. By his will, Mr. Martin directed: (1) that his just debts be paid; (2) he gave to his wife the home on Cherry Street in Greenville; (3) he devised all the residue of his estate to Benjamin C. Martin and Henson E. Martin as trustees, empowering them to manage and control his estate for a period of from ten to twenty years after his death; and directing upon final settlement of his estate, it be distributed equally to his wife, Hessie D. Martin, and to each of his five children—Lorene Martin Wickliffe, Benjamin C. Martin, Earl Martin, Henson E. Martin and George Martin.

On April 15, 1946, Hessie D. Martin renounced the will of her husband, and elected to take dower "under the law." On June 3, 1946, Benjamin C. Martin, as executor and trustee, and Lorene Martin Wickliffe and Earl Martin, represented by Woodward, Dawson & Bartlett, attorneys, filed a petition in equity in the Muhlenberg circuit court against Henson E. Martin, individually and as executor and trustee, and Hessie D. Martin and George Martin, asking for a construction of the will of Charles E. Martin, deceased, and "that it be adjudged and determined whether the attempted renunciation" of the will of Charles E. Martin by his wife, Hessie D. Martin, "is valid and effective and what, if any, effect said fact may have upon the handling, disposition or distribution of any or all of the property and assets bequeathed and devised in and by the last will and testament" of Charles E. Martin, and asking that the powers and duties of the executors and trustees of the estate be prescribed and defined; that all questions in any wise relating or pertaining to the estate, as well as any claims against or in favor of the estate be "litigated and disposed of in this action." The plaintiffs prayed for their costs in the action, including "a reasonable at-

torneys' fee to their attorneys, Woodward, Dawson & Bartlett.''

On July 1, 1946, Hessie D. Martin and George Martin each, through attorney Hubert Meredith, filed separate answer, counterclaim and cross-petition, and on July 1, 1946, Henson E. Martin, as an individual and as co-executor of the estate, through his attorney, Hubert Meredith, filed his separate answer.

On April 7, 1947, an agreed judgment was entered, and on August 4, 1947, October 10, 1947, and December 29, 1947, supplementary orders and judgments were entered.

The question on this appeal is the reasonableness of the attorneys' fee allowed Woodward, Dawson & Bartlett. The legal services performed by this firm for the Martin estate extended over the period June 1, 1946 to February 17, 1948. A statement of the services performed is set out in the 250-page record sent to this court. Over the 20-month period, this firm represented the estate in two trials and two hearings; prepared and had filed eight individual pleadings; conferred personally with interested parties at least 35 times; communicated 40 times by telephone or mail with respect to the estate, and performed services to the extent that the estate of $750,000 was saved a substantial amount.

By order of December 29, 1947, the firm of Woodward, Dawson & Bartlett was allowed ''the sum of $10,000 as a partial payment for services heretofore rendered.'' The court made ''this allowance with the understanding that the interested parties may at a subsequent date offer proof relative to the reasonableness of this allowance and any subsequent request for an allowance of fee.'' On January 24, 1948, motion was made ''to set aside the order which was made in vacation on or about December 29, 1947, tentatively allowing a fee of $10,000 to Woodward, Dawson & Bartlett, attorneys for plaintiffs, as partial pay for their services in this case.''

On February 10, 1948, Woodward, Dawson & Bartlett filed a detailed statement of the services rendered—15 pages of the record—giving the dates and details of the services rendered. On March 3, 1948, they filed a

supplemental statement of services rendered—four pages of the record—setting out the dates and details of additional services rendered.

The defendants, Henson D. Martin and George Martin, on February 11, 1948, filed a response to the motion and statement of Woodward, Dawson & Bartlett, summarizing the proceedings in this action; denying that "plaintiff's attorneys effected a saving of any amount for the estate," and stating that the "services rendered by the attorneys for plaintiffs is not reasonably worth more than $2500 to $5000," and that they filed "the affidavits of a number of reputable attorneys at law in support hereof." They filed the affidavits of seven attorneys, each saying that $5000 is a reasonable fee for the firm of Woodward, Dawson & Bartlett; Woodward, Dawson & Bartlett filed affidavits of eight attorneys stating that they were entitled to $25,000 or more.

On February 5, 1948, the trial court entered an order setting aside and holding for naught "the order entered in this action December 29, 1947, allowing plaintiffs' attorneys a fee of $10,000," and on the same day the trial court entered a final order and judgment saying:

"* * * It is the opinion of the court, and he so orders, finds and adjudges that a fee in the amount of $15,000 is reasonable for the services rendered to date. If said fee is not paid said attorneys by April 26, 1948, said sum shall bear interest at the rate of 6% per annum from that date until paid, which fee is to be charged and paid as a part of the costs, chargeable against the entire estate. * * *"

Section 12 of the Canons of Professional Ethics of the American Bar Association, provides:

"In fixing fees lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

"In determining the amount of the fee, it is proper

to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

In Wilhoit, Director of Banking, et al. v. Brown, 295 Ky. 732, 175 S. W. 2d 529, 531, we, after quoting the above Canon, said:

"This test is substantially that which has heretofore been recognized by this court. See Axton v. Vance, 207 Ky. 580, 269 S. W. 534; Baxter v. Hubbard, 242 Ky. 751, 47 S. W. 2d 743, 747. The exhaustive annotations under the title, 'Amount of attorney's compensation (in absence of contract or statute fixing amount)' in 143 A. L. R. 672, embrace a summary of the standards recognized by all the courts of this country and apparently have given the amounts allowed as attorney's fees in all the reported cases. Under existing conditions, we are not willing to accept the rule of some courts that attorney's fees are to be measured in part by comparison with the salaries paid the judges of the state. We are of opinion, as stated in Baxter v. Hubbard, supra, that 'The laborer is worthy of his hire.' We do not subscribe to the prayer of a good sister for her pastor: 'Oh Lord, you keep him humble and we'll keep him poor.' "

The Chancellor was familiar with the services rendered by the attorneys in this case. He no doubt had in

mind the rule for fixing fees, as above set out. While we believe that the amount allowed by the Chancellor was liberal, under all the facts and circumstances of this case we do not feel authorized to reduce that amount.

The judgment of the circuit court is affirmed.

Judge Cammack not sitting.