CASE 70—EQUITY—MARCH 19, 1881.

# City of Louisville v. Anderson, &c.
# Same v. Joyes.

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. Taxes illegally assessed by the city of Louisville, by mistake of law upon land used only for farming purposes, and paid to the collector by the owners, by mistake of both law and fact, may be recovered back from the city.

2. Where a party "has his day" in court to litigate a demand, but, instead of doing so, voluntarily pays it, he is without remedy.

City of Louisville v. Anderson, &c.   Same v. Joyes.

3. But, being compelled either to pay the taxes or suffer his property to be sold by the collector, he has his action against the city to recover back the money wrongfully demanded by the agent of the city.

4. Failing to rejoin to the reply of appellees that they did not discover their mistake until a fixed period, the averment must be taken as true.

T. L. BURNETT, CITY ATTORNEY, FOR APPELLANT.

1. The money was voluntarily paid.

2. Appellees had full knowledge of the situation of their land, and having voluntarily paid the taxes, they cannot recover them back.

3. The payments were made without protest or objection.   More than five years have elapsed after appellees, by ordinary diligence, ought to have discovered the alleged mistake.

4. The weight of authority outside of Kentucky is, that money paid under mistake of law cannot be recovered back.   (Ray, &c., v. Bank of Kentucky, 3 B. Mon.; Covington v. Powell, 2 Met., 228; Louisville v. Henning, &c., 1 Bush, 383; Cooley on Taxation, 566-7-8; Burroughs on Taxation, 266; Underwood v. Brockman, 4 Dana, 317; Courtney v. Louisville, 12 Bush, 418; 51 Barb., 159; 13 Gray, 476; 24 Conn., 88; 31 Penn. St., 73; 7 Cushing, 123; 34 Ala., 400; 1 Ohio, 268; 9 Cowan, 674; 1 Story's Eq. Jur., 148, 156; Kerr on Fraud and Mistake, 408; 27 Pa. St., 497; 2 Johns. Ch'y Rep., 51; 10 Peters, 153; 27 Maine, 145; 39 Ind., 234; 2 Bur., 1009; 2 H. Bl., 214; 5 Taunt., 160; 2 East., 469; Broom's Leg. Max., 174 to 185; 2 Smith's Leading Cases, 453 to 468; 4 Bush, 636; Grundy v. Grundy, 12 B. Mon., 271.)

SIMRALL & BODLEY, P. JOYES, AND W. LINDSAY FOR APPELLEES.

1. Money paid under mistake of law and fact to one colorably but illegally claiming to be entitled to it, may be recovered by the party paying it.

2. The money sought to be recovered was paid under compulsion.

3. Limitation cannot begin to run until after the discovery of the mistake.   (Underwood v. Brockman, 4 Dana, 315; Mosely, 364; 8 Wheat., 214; 5 Conn. R., 401; Ray v. Bank Ky., 3 B. Mon., 512; Gratz v. Redd, 4 B. M., 190; 1 Met., 153; 3 Ib., 228; Henning v. Louisville, 1 Bush, 383; 2 Barn. & Cr., 729; Sm. Lead. Cas., 395; 7 Man. & Gr., 294; Lightfoot v. Walker, 12 Bush, 498; 4 Met., Mass., 187; 5 R. I., 472; Covington v. Powell, 2 Met., 226; 7 Cush., 444; 4 Met., 190; 17 Pick., 214; 3 Cush., 571; Dye v. Holland, 4 Bush; Crane v. Prather, 4 J. J. M.; 40 N. Y., 402; 1 Hill, 287; Lucas' Dig., 30, 259, 260; Johnson v. Louisville, 11 Bush, 534; 70 N. Y. Rep., 500; 12 Bush, 421.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

These several actions in equity were instituted in the Louisville chancery court by George W. Anderson and others against the city of Louisville, in which it is alleged that they (the plaintiffs) are the owners of certain real estate in the county of Jefferson, within the corporate limits of the city of Louisville, a municipal corporation created by the laws of the state, and authorized to sue and be sued; that this corporation for a number of years not only claimed the right, but did in fact tax the lands of the plaintiffs (now apellees) for its own municipal purposes, and to defray the expenses of its municipal government. The lands taxed are then particularly described, as well as the assessment, levy, and collection of the taxes for each year, and it is further alleged that the land had been used during those years for farming purposes, and that the same had never been appropriated to or used for city purposes, and the jurisdiction, authority, and government of the city are of no use or benefit to the land or its owners; that the extension of the boundary of the city so as to embrace this land was to enable the corporation to tax it, and thereby increase its revenue, and for no other purpose; that the taxation was unjust and illegal, and is not now imposed on the land, and the said city authorities have, since the collection of these taxes, expressly declared that this land was not the subject of taxation, nor does the corporation now claim or assert the right to tax this property. The appellees also allege, they paid these taxes under a mistake of law and fact, and in ignorance of their rights, and when they believed the city, by reason of its charter, had the right not only to extend its boundaries, but when extended, had the right to tax all property within its corporate limits, and being satisfied

the same was a legal charge on the land, and that the corporation would proceed, as it threatened to do, to coerce payment by a sale of the property; that the corporation, on a proper demand made, refused to refund the money wrongfully collected.  These, in substance, are the facts alleged in each petition, and the only denial by the city is, the payments were not made under a mistake of law or fact, and an affirmative allegation that, in view of the location of the land and its relation to the city population and improvements, the right of the corporation to tax was at least questionable, and the appellees, with a full knowledge of all the facts, consented to the tax, and paid it voluntarily, and without even a protest.  The corporation also pleaded the five years' statute of limitation, and the appellees replied that they did not discover the mistake made by them as to their legal rights until the tenth of January, 1877, to which there was no rejoinder.

The chancellor adjudged the appellees entitled to recover on the ground that they made the payment under a mistaken belief as to the right of the city to impose the taxes, and that it would proceed to sell the property (as it had threatened) if the taxes were not paid.  It is plain, if the decision of this court in the case of Courtney against the city is adhered to, the corporation had no right to levy these taxes, and equally as clear the appellees paid them under a mistaken belief that the city had the right to impose the burden.  There was no question raised between the corporation and these tax-payers as to their liability for the tax, and therefore it was not paid by way of compromise or when the appellees had reason to doubt the exercise of such a power on the part of the corporation.  It is

maintained by counsel for the city, in an argument of much force, and not wanting in authority to support it, that although the city may have had no right to tax this property, and the payment of the tax was made by appellees under a mistake as to their legal rights, they cannot recover back the money.    This is the sole question in the case.

A demurrer was filed by the city to the several petitions; but that pleading presents the same question as that arising from the proof.    This court will assume, without discussing the facts of the case, that the corporation exceeded its power in levying this tax and requiring its payment.    The proof is conclusive on that question.    It is argued by counsel for the city that this question does not arise upon any contract made between the corporation and the tax-payer, but by reason of a contribution imposed by the former on the latter for public purposes; and when this burden is imposed, there is a moral and political duty resting on the citizen to discharge it, and although the tax is unconstitutional, if voluntarily paid, cannot be recovered back.

In the case of Underwood v. Brockman, 4 Dana, this court said: "When it can be made perfectly evident that the only consideration of a contract was a mistake as to the legal rights or obligations of the parties, and where there has been no fair compromise of *bona fide* and doubtful claims, we do not doubt that the agreement might be avoided on the ground of a clear mistake of law, and a total want, therefore, of consideration or mutuality." This doctrine had been previously announced by this court, in the case of Fitzgerald v. Peck, and was followed in the case of Ray v. Thornton, 3 B. Mon., in which it is said: "Whenever, by a clear and palpable mistake of law or fact, essentially bearing upon and affecting the contract, money

has been paid without cause or consideration, which in law, honor, or conscience was not due and payable, and which in honor and good conscience ought not to be retained, it was and ought to be recovered back." The same doctrine has also been recognized in numerous other cases decided by this court, in all of which the court has been careful to say, in substance, that where the parties are differing as to whether a contract was entered into, or the nature and character of its stipulations, or have made a compromise of an honest and *bona fide* claim, the chancellor will not grant relief on the ground either of a mistake of law or fact. The Supreme Court of Connecticut, in Northrop v. Grave, 19 Conn., says: "We mean distinctly to assert, that when money is paid by one under a mistake of his rights and duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, whether such mistake be one of fact or law, and this, we insist, may be done both upon the principle of Christian morals and the common law." In the class of cases arising on contracts in which such relief has been granted, and when the parties not only contract, but are competent to understand their business transactions, a much stronger case, it seems to us, should appear, evidencing the mistake complained of, than in cases where a corporation invested with the power to tax assumes to exercise the power in plain violation of the constitutional rights of the citizen. The citizen has no voice in imposing the burden, and must submit to a proper exercise of the power, however onerous it may be, and in determining whether the legislative action of the state or city government in such cases is within constitutional limits, he has the right to presume the perfect legality of such action, and the

maxim, *ignorantur lex non excurat* does not apply. Ignorance of law will not excuse one from the violation of either the criminal or penal laws of his country, nor will it ordinarily relieve him from mistakes committed in the business transactions of life; but he is not presumed to know more than those who constitute the legislative and executive departments of the government under which he lives, whether state or municipal, and if relief can be granted in reference to contracts between individuals, the stronger the necessity for the interposition of the chancellor in a case like this, where the burden is not self-imposed, or discharged by reason of any moral or political duty.

While the payment of taxes is both a legal and moral duty, no obligation rests on the citizen to pay or submit to a wrong assessment; and when he pays an unauthorized tax, having discharged the burden as a law-abiding citizen, he had the right to believe, when making the payment, there had been no abuse of the power to tax by those to whom it had been confided. Instead of punishing the citizen for complying with what he believed to be his duty, by withholding from him the money he has wrongfully paid, he should be encouraged to assume such burdens, instead of resisting the collection, and this should be done by refunding him the money paid when there was no legal or moral obligation upon him to make the payment, nor any legal or moral right on the part of the city to make the demand or collect the money.

It is true that Cooley on Taxation lays down the doctrine, "that a tax voluntarily paid cannot be recovered back; or says that it has been held by the authorities, with very few exceptions, and it is immaterial in such a case that the tax is illegally laid, or even that the law under which it was laid

was unconstitutional: every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the state should furnish him with legal remedies to recover it back."

He further says : " All payments of taxes are supposed to be voluntary which are not made under protest, or under the apparent compulsion of legal process."

In the case of Sheldon v. School District, 24 Conn., 88, it was held, if one's land is sold for taxes after protest, and he buys it in, it must be regarded as a voluntary payment, and will give him no right of action.   The case of Taylor v. Board of Health, 31 Pa. St., the taxes had been levied under an unconstitutional law, and paid for a series of years, when an action was brought to recover it back.   The court said : "The money was paid without dispute, and he thus assented to the collection of tax for public purposes, and of course to the application of it.   Relief was denied."

In the case of Town Council v. Burnet, 34 Alabama, it was held that the payment of money to a town clerk, as the price of a license under an ordinance afterwards declared void, could not be recovered back.

All these, and many more cases referred to, sustain the position assumed by the attorney for the city; but in the last named case, in denying a recovery for money paid under the void ordinance, the court distinguishes that case from one where money has been paid in discharge of a void assessment of taxes, because in the latter case there was an apparent means of enforcing the illegal demand without resort to judicial proceedings, and without giving the party a day in court.   (Viley v. Palmer, 14 Alabama; Crutchfield v. Wood, 16 Alabama.)

While this court recognizes the rule laid down in Cooley¯
and the decisions following it, we differ in the conclusion,
reached as to what constitutes a voluntary payment of taxes.
In the case of the City of Covington v. Powell, 2 Met., 226,.
Powell instituted an action against the corporation, in which
it is alleged, "that the money paid by the plaintiff was paid.
as taxes based on an illegal assessment made by the city,.
and in ignorance of his rights, or of the fact the assessment:
was illegal; but he believed at the time it was legal and col-
lectable."   The city did not contradict the fact that the·
assessment was void, but pleaded that the plaintiff was.
apprised of the law and facts when he paid the taxes, and.
with such knowledge made the payments voluntarily; and,
further averred "that the appellant had enjoyed the benefits
from the improvements made by the money collected under:
the assessment, in common with the other inhabitants of the·
city."   It was held in that case that the promptitude and·
obedience of the plaintiff to what he supposed was the law·
should not prejudice his right to reclaim the money paid, if
paid wrongfully, and in ignorance of his rights; nor did it·
appear that he or his property had received any special or·
direct benefit from the money paid, and therefore a recovery
could not be denied.   The judgment of the court below was
affirmed, and the money improperly collected ordered to be
restored.

In the case of the City of Louisville against Henning &.
Speed the latter sued the city to recover back a sum of
money paid under an invalid assessment, alleging that the·
plaintiffs paid the money in ignorance of their rights.   The
city denied that the tax was unauthorized and invalid, but·
admitted that if no lawful authority existed to impose the·
tax, then the plaintiffs paid the money in ignorance of their:

rights.    This court held the taxation unauthorized in that case, and affirmed the judgment of the court below requiring the city to refund the money.    The plaintiffs in that case knew as much of the law and facts applicable to their rights as the plaintiffs in the present case.    They knew their property had been taxed, and believed the city authorities had the power to impose the burden, and for that reason paid it.    These cases were followed by the case of the City of Bowling Green v. Elrod, MS. Opinion, and we find no decision of this court in conflict with the doctrine recognized and established in these cases.

In the present case, both the city and the appellees acted in good faith.    They both believed the taxation to be constitutional, until it was finally made to appear that both were mistaken, and that the city had received the money of appellees without any consideration.    There was no contract or bargain in this case by which one undertook to pay and the other to receive.    The money was not paid at the instance of the tax-payer to one who was a mere passive agent without authority to demand or coerce payment, but to one who had not only the authority to receive it, but to exact payment by levying on the property taxed; and upon the refusal of the appellees to pay, a sale of the property was inevitable.    The party charged with payment has been afforded no opportunity of being heard, and knows that the tax-gatherer is clothed with the process of the law to enforce his demand if payment is denied.    Such a payment, or a payment made in ignorance of the fact that the taxation is void, with a knowledge that compelling process is at hand to coerce the demand, must be regarded as involuntary, and the party entitled to recover his money.

Where a party is entitled to a day in court, and can litigate the demand about to be enforced against him, but instead of doing so, voluntarily pays it, he is without remedy. When he can plead and make his defense, a payment made under protest will be regarded as voluntary, or if he has an option either to litigate the question or submit to the demand and pay the money, in all such cases there is no compulsion, and relief will be denied. (Herron v. Monroe, 7 Cushing, 131.)

In the case of the Town Council of Cohaha v. Burnet, already cited, where money was paid to the clerk of the town in order to obtain a license to retail liquor, and the ordinance requiring the license was subsequently held void, it was adjudged that no recovery could be had of the money paid to the clerk, as there was no proof the payment was coerced or any summary process compelling its payment. The party could have refused to pay the money, or could have tested the validity of the ordinance without subjecting himself to a penalty, or could at least have refrained from selling his liquor or goods. The payment of taxes is regarded as involuntary, because the tax-collector has the authority to levy and sell on the refusal to pay. The process is summary, and in the hands of the party making the demand, and the tax-payer must submit to the levy or pay the money. The distinction is plain between such cases, and where the one making the payment is himself claiming the right, and the recipient of the money the mere passive agent of the corporation. We do not mean to be understood, in recognizing this distinction, as assenting to the doctrine that no recovery can be had in any case where the money sought to be recovered has been paid under a mistake of law, and without compulsion.

As to the plea of the statute of limitation, we should have no hesitation in confining the appellees to a recovery within five years next preceding the commencement of the action, but for the statute providing that "in actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake, but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud." (General Statutes, section 6 of article 3, chapter 71.)

In this case the appellees, to avoid the plea of the statute, reply that they did not discover the mistake until a fixed period, and to this reply there is no rejoinder; so the matter in avoidance stands confessed and must be taken as true.

We do not mean to adjudge that a decision of this court, determining such taxation illegal and void, will control the decision as to when this discovery alleged by the appellees was first made, as such a decision can afford no guide in determining the issue. The party is required to show, when the mistake originates from his own action as well as that of another, that he has exercised such diligence as a prudent man would exercise in ascertaining what his rights are, and five years in which to make such a discovery should certainly be held sufficient. In this case, however, the mistake was mutual, and both acted during the whole period as if the right to demand and receive was unquestioned. Whether this should alter the rule as to diligence is not necessary to inquire, as the pleadings settle that question.

Judgment affirmed.

This opinion applies also to the case of Pat. Joyes v. City of Louisville, the cases having been considered together.