## Nettleton's Exor. v. City of Louisville.

(Decided May 20, 1921.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.   Taxation—Payment Before Due—Voluntary Payment.—The pay-
ment of taxes before they are due for the purpose of getting the
benefit of a discount fixed by law, and at a time when their col-
lection could not have been coerced, is a voluntary payment.

2.   Taxation—Voluntary Payment to Municipality—Recovery.—The
rule, that taxes voluntarily paid to a municipality cannot be re-
covered back, is based upon the high, sound, public policy that
the orderly and efficient administration of municipal affairs should
not be interrupted or interfered with by requiring it to return to
taxpayers taxes voluntarily paid, and which have been used or ap-
portioned by the municipality to its various administrative bodies.

W. W. THUM for appellant.

WM. T. BASKET and JOSEPH S. LAWTON, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

In January, 1915, Elizabeth Cluff Nettleton died a
resident of Louisville, leaving a will wherein, after mak-
ing certain specific bequests, she left the residue of her
estate, consisting of personalty and real estate in Louis-
ville, to certain named trustees, to be held and used by
them to provide a home and maintenance for a certain
class of indigent and aged persons. The Louisville real
estate so devised was not described in the will, and the
assessing officers of the city of Louisville continued to
assess for taxation such real estate as had a situs there-
in up to and including the year 1920.

The executor of the will during each of those years
paid the taxes on the Louisville real estate at a time
when he could take advantage of and get the benefit of
a discount provided for in the charter for cities of the
first class, and in each instance at a time before they
were actually due, and before their payment could have
been enforced.

This is an action by the executor and the trustees
named in the will for the two-fold purpose of enjoining
the further assessment of taxes against the Louisville
real estate and to recover back the taxes so paid for the

years 1915-1920, inclusive, upon the ground that the property is used exclusively for a charitable purpose and therefore is exempt from taxation.

The lower court enjoined the city and its assessor from assessing the real estate for taxation for the year 1921 and succeeding years upon the ground that the property was devoted to the use of an institution of public charity, but sustained a demurrer to that paragraph of the plaintiff's petition which sought to recover the taxes so paid by the executor. There is no appeal from the judgment granting the plaintiff the injunctive relief sought, but the plaintiff appeals from the judgment denying him the right to recover the taxes.

It is conceded that the property upon which the taxes were collected has been since the death of the testatrix used and held for purely public charity as provided in the will, and that the same was, under section 170 of our Constitution, exempt from taxation.

The plaintiff alleges that the taxes paid by the executor in each of the years named were involuntarily paid to the city of Louisville and paid under coercion, compulsion and threat of penalty, and under threat of involuntary, summary and forced sale, and were paid by mutual mistake of the plaintiff, on the one side, and the city of Louisville and its taxing and collecting officers on the other.

In an amended petition, however, the exact date of payment of the taxes in each of the years named is alleged, and that date in each instance is at a time before the taxes for the year were due, and payment was evidently made in each instance in order to get certain discounts provided for in the charters of cities of the first class.

So that a proper interpretation of the plaintiff's petition as amended would appear to be that the executor in each of the years named paid the taxes before they became due for the commendable purpose of conserving and protecting the estate in his charge by getting the benefit of the discount fixed by law, but it is apparent that there could have been no coercion or involuntary payment upon his part at a time before the taxes were due, and that his payment in each instance was a voluntary payment, for having paid them at a time when their collection could not have been coerced, their payment must of necessity have been voluntary.

The contention of appellant's counsel is that the provisions of section 170 of the Constitution are self-executing, and that under its terms the assessment of or taxation upon property devoted exclusively to charitable purposes is void from the beginning and cannot be made valid by any action of the administrative officers of the city.

Conceding the correctness as well as the force of this argument, it would only seem to be necessary to say that the reason for the rule which denies to one the right to recover back from a municipality taxes voluntarily paid to it does not look to whether the tax or assessment in the beginning was totally void or merely voidable, but is based upon the high, sound public policy that the orderly and efficient administration of municipal affairs should not be interrupted or interfered with by requiring it to return to taxpayers taxes which have been voluntarily paid and which have been used or apportioned by the municipality to its various administrative bodies; for if such things may be done, it necessarily makes uncertain and precarious the funds which the city may properly set apart to its several departments.

The case of Brands, etc. v. City of Louisville, 111 Ky. 56, was where property owners in the city of Louisville, under a mistake of law, paid certain assessments for street repairs for which the city alone was liable, and they sought to recover back from the city the amounts so paid, and the court in that case, in denying to them the right to recover, and in stating the public policy involved, said:

"If a recovery can be had in this case, then one may be had in every case where the burden is wrongfully apportioned, although the assessment has been voluntarily paid. Such a rule would involve the city government in inextricable confusion. The council could not know what liabilities might be anticipated, or what taxes should be levied. Under the Constitution, the levy of taxes must specify the purpose for which the tax is to be used, and a tax levied for one purpose cannot be applied to another. The reason for the rule denying a recovery of taxes voluntarily paid is, after all, the security and efficiency of the city government; and every reason which forbids the recovery of municipal taxes that have been voluntarily paid seems to us to apply with equal force to assessments for municipal improvements. The

city is required to make the apportionment. If an error is made, it is the duty of the property owner, no less than the city officials, to detect and correct it. If, instead of doing this, he voluntarily pays the assessment, and the city makes other contracts and assumes other obligations on the idea that these matters are all settled, it seems to us that sound public policy requires the loss to fall on the taxpayer who has acquiesced in the assessment and voluntarily paid the money rather than litigate the right.''

In City of Louisville v. Becker, 139 Ky. 17, there was a void assessment of the personal property of a non-resident of the city of Louisville, and the taxes were voluntarily paid, and in that case, as in this, for the purpose of getting the benefit of the discount provided by the city charter, and the judgment of the circuit court in that case, holding that the payment of a void tax upon a void assessment might be recovered from the city, was reversed, and the public policy to which we have referred was, in effect, held to be paramount to the rights of the individual.

In the latter case, as in this, the assessment was invalid and yet a recovery was denied in upholding the sound public policy involved.

But it is argued here that there is no statutory method prescribed for the taxpayer to be heard as against these void taxes assessed and levied on exempted real estate, and that on July first of each year there is imposed a penalty of ten per cent, and that in the fall following the property is advertised and sold if the taxes are not paid, and that this amounts to coercion.

It would seem to be a sufficient answer to this contention to say that the petition discloses that in each of the years involved the taxes were paid by the executor in February or March, and in view of the fact that no penalty attached until the first of July, and no drastic or summary proceeding could be inaugurated until after that time, the coercion could not have been effective in February and March preceding. At any rate, the precise question was passed upon in the Becker case, *supra,* and the court, in response to a similar argument, said:

''It is admitted by the appellant city that appellee's notes were not legally assessable or taxable in the city of Louisville, and that, if she had resisted the assessment or refused to pay the taxes, the court would have re-

lieved her of paying them. She did not, however, pursue that course, but voluntarily, and in order to obtain the rebate allowed by law, paid the taxes before the city could enforce their payment or impose a penalty for their non-payment, and now seeks to recover them back, upon the ground that they were paid under a mistake of law.''

The Brands and Becker cases to which we have referred were later upheld and reaffirmed in the case of City of Louisville v. Belknap Hdw. & Mfg. Co., 145 Ky. 266. And, it appears to us the doctrine has become so thoroughly engrafted upon our system, and is based upon such a clear, sound and reasonable public policy, that it should be deemed settled in this state. The fact that its application injuriously affects a worthy charity can only be regretted but not avoided.

Judgment affirmed.