## City of Paducah v. Smith's Ex'r.
## Smith's Ex'r v. City of Paducah.

(Decided May 24, 1938.)

W. V. EATON for appellant.

WHEELER & SHELBOURNE and A. E. BOYD for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing in part and affirming in part.

A judgment was rendered in the McCracken circuit court against the city of Paducah in favor of James P.

Smith, executor of the estate of J. R. Smith, deceased, for $750.76, with 6% interest per annum from June 27, 1933, until paid. From that judgment, the city appeals.

In the same suit James P. Smith, executor, sought a judgment against the city for an additional sum of the same amount. The court adjudged him not entitled to that sum. From that judgment he prayed a cross-appeal which was granted; consequently, the correctness of the two judgments are before the court.

The deceased, J. R. Smith, as appears from the record, was, at his death, the owner of a large number of separate parcels of real estate and business property situated in the city of Paducah which aggregated to the estimated value of approximately $185,000.00. James P. Smith, executor of his estate, in the year, 1932, listed the several parcels of real estate for city and school purposes as of July 1, 1932, for the year, 1933, as provided by section 3178, Kentucky Statutes. The property consisted entirely of real estate with the improvements thereon. The purpose of making the assessment as of July 1, 1932, was to fix the assessed value, as required by law, as a basis on which the tax rate for the year 1933, was to be calculated. Later, the board of equalization of the city met for the purpose of equalizing the taxable property of the citizens of the city and of increasing or decreasing the assessed value thereof. The board in performance of its duty, as authorized by section 3181, Kentucky Statutes, saw proper to, and did, increase the assessed value of the real estate of the Smith estate to an amount of approximately $90,000.00 as alleged by the executor, in his petition. The board after equalizing all of the assessed value for taxable purposes for the city and for school purposes at the sum of $20,904,985, included the real estate belonging to the estate of J. R. Smith. They then made a blanket reduction of 30% reducing this gross assessment for taxation purposes to $14,-833,489. After the equalization and blanket reduction of 30% was made, the board, as authorized by section 3181 of the statute, supra, presented in the form of a report what they had done to the Mayor and the Commissioners of the city of Paducah for approval which was in proper form and manner duly received, accepted and approved by the authorities of the city. J. R. Smith's executor being dissatisfied with the assessed valuation fixed by the board, appealed from the board's

valuation to the quarterly court of McCracken county, as he was authorized to do, under the provisions of section 3181, supra, of the statutes. The case was then tried by the quarterly court. The board of equalization and the city being before the court and represented by counsel, and after a full consideration, the court fixed the value of the Smith property at a less assessment value than that fixed by the board of equalization. The judgment of the quarterly court was never set aside, modified or appealed from, but is now, and was, when this action was instituted, in full force and effect. The quarterly court after fixing the value of the several lots of real estate and the improvements thereon, as set out separately in the judgment, adjudged as follows:

"It is further ordered and adjudged that the above and foregoing valuation of the property of the plaintiff is the true and correct valuation of said property for all taxation purposes in the city of Paducah for the year, 1933, and that the taxes levied for all purposes as against said property shall be based upon the valuations established in this judgment. And it is further adjudged that the valuations fixed and determined by the board of equalization of the city of Paducah is hereby set aside and superseded by the values on said property established by this judgment."

It is contended by the city that the assessed valuation fixed in that judgment is the proper basis on which the amount of taxation at the rate fixed by the city should be calculated. On the other hand, Smith's executor insists that from the valuation fixed by the judgment there should be deducted the 30% blanket reduction made by the board of equalization, which was accepted and approved by the city. The tax that was collected by the city from the Smith estate was based wholly upon the value fixed by the quarterly court judgment and no reduction of 30% was made. To that extent the Smith estate insists that it overpaid the tax due the city, and is entitled to a judgment for its repayment.

The city insists that even if the amount of tax paid by the Smith estate was illegal and too much, that Smith's executor paid it at a time and under circumstances, that amounted to a voluntary payment, and for that cause, he is remediless and should not recover.

If the city is correct in that contention, it will be unnecessary to discuss or to consider the contention of Smith's executor of the reduction of 30% of the valuation of the estate's property fixed by the quarterly court; for, if we reach the conclusion, as contended by the city, then the controversy between the parties is settled by such a judgment.

Smith's executor strenuously contends that the payment of the amount of the tax in two separate payments, one on the 27th day of June, 1933, and the other for practically the same amount on the 3rd day of October, 1933, were made under protest and not voluntarily; for that reason he should recover the amounts for which he sued with accumulated interest. On the question of protest, he relies upon the testimony of Miss Marie S. Brooks, the private secretary of Smith's executor. That part of her testimony that pertains to the question under consideration is as follows:

"* * *

"Q. Do you remember in substance, however, what took place—the effort you made to pay upon the valuation fixed by the quarterly court judgment less the blanket reduction of 30%? A. I took a blank check, having had the taxes as I figured them on a clip of paper, and I told him I was ready to pay the taxes, and he said he would go get a copy of the judgment in Mr. Troutmen's office, I think, and he came back and told me—'Miss Brooks, the amount will be so much, less exoneration,' and then I said: 'That's the amount of the judgment; that is a blanket reduction of 30%;' and he said: 'No, we have been instructed,' (or words to that effect)— 'we know you pay according to the judgment;' and I said: 'The judgment is the assessment,' and he said: 'No, you have to pay according to the judgment;' and I said: 'I had figured it with the blanket reduction off, and I don't have the figures before me.' He said: 'We cannot allow that; your exoneration is based just on the judgment.' I said: 'Well, there is nothing else to do,' and I had to pay it and go report it to my boss.

"Q. Did you pay it under protest? A. Yes, I didn't knock him down or anything like that. * * *

"Q. Later, in the year when did the second half become due? A. In October.

"Q. Did you pay the second half? A. I did. I didn't open my mouth. It was the same thing and either right or wrong, what would be the use of repeating yourself?

"Q. You did not have the same conversation? A. No, I had reported it and that was up to the executor, and I had made one effort and failed in that. I was just the hired hand and gave the check for the second time.

"Q. I will get you to procure the canceled check which evidences your payment of the second half of the 1933 taxes and file that with the notary, identified with your name and this date, and the tax receipt, to be marked Exhibit 2; will you do that? A. Yes."

On cross-examination, she stated:

"Q. When you went in June to pay the taxes you took a check with you, but you at that time or before you went to the City Hall filled out the amount of the check? A. Not on the check. I took a blank check, but had it on a piece of paper.

"Q. When you got to the City Hall, you filled in the amount of taxes demanded, in that check in June 1933? A. Sure—in the City Hall.

"Q. When you went back in October you say you raised no question at that time because you had in June, and you took your check with you that time; did you fill out that check before you went to the City Hall that time? A. I would rather think I did because they had insisted on the June payment.

"Q. When was any question raised the first time about any payment now claimed to be an overpayment of taxes? A. At the time I paid it.

"Q. After that when was it broached or brought up? A. I would not know. I don't think I let up on it until time to pay it another time.

"Q. To whom did you make complaint? A. I discussed it in the office.

"Q. In the Finance office? A. No. The only time I discussed it there was when I endeavored to pay less than 30%.

"Q. What city official was this discussed with, after or at the time you made the payment? A. The clerk in the office.

"Q. You never discussed it with any other official. A. No."

Smith's executor relies chiefly for support of his contention upon the following cases: Ziedman & Pollie, Inc. v. City of Ashland, 244 Ky. 279, 50 S. W. (2d) 557; Brunner v. Town of Stanton, 102 Ky. 459, 43 S. W. 411; City of Louisville v. Anderson, 79 Ky. 334, 42 Am. Rep. 220; Fecheimer Bros. & Co. v. City of Louisville, 84 Ky. 306, 2 S. W. 65; Spalding v. City of Lebanon, 156 Ky. 37, 160 S. W. 751, 49 L. R. A., N. S., 387; Great Atlantic & Pacific Tea Co. v. City of Lexington, 256 Ky. 595, 76 S. W. (2d) 894, and possibly several others of similar import. When those cases are fully and carefully analyzed, the taxes or the license paid under protest that were recovered, arose mainly because of void ordinances, or paid at a time when penalties were about to be imposed on account of violating the provisions in failing to pay the taxes or license. In those cases, the facts on which the conclusion of the court was reached are not similar to those in the instant case. In the case before us, at the time the tax was paid, there were no penalties imposed, no threats made of immediate distraint, nor coercion nor levy made nor threatened to be made in order to collect the tax. In each instance, the tax was paid prior to the time that any distraint or levy could have been made under the law. The case of City of Covington v. Lovell & Buffington Tobacco Company, 204 Ky. 40, 263 S. W. 676, is on all fours to the case under consideration. That case involved the collection of taxes based upon assessment of exempted property. Section 3185, Kentucky Statutes provides, in substance, that taxes are due and payable one-half each, within 30 days after certain specified days, and in this instance, the taxes could be paid on the first of June and the first of October, 1933. No, part of the taxes became delinquent until after one calendar month of those dates had passed. At that time, if the taxes were not paid, the statute authorized a penalty of 10% to be added to the amount of the tax and the tax thereafter bore interest of $\frac{1}{2}\%$ for each month until paid. No distraint could be made until the taxes were delinquent. The taxes for which this action was instituted were not delinquent when paid. The first half of the

taxes were paid on the 27th day of June, 1933; the other half, on the 3rd day of October, 1933, all within the calendar month after the first days of June and October.

Counsel overlooks the City of Covington Case, supra. The facts on which the court reached its conclusion in that case were in effect the same as in this case. The conclusion reached by the court in that case preclude's Smith's executor from a recovery of any part of the tax paid by him to the city of Paducah. In the City of Covington Case the tobacco company complained that the city of Covington, a city like Paducah, of the second class, was made to pay a tax on raw material in the form of tobacco, which it had at its factory, for the purpose of manufacture, which was exempt from local taxation, under section 4019a-10, Kentucky Statutes. It was alleged that the tax was paid under a mistake of law and under compulsion. In the instant case, it is alleged that Smith's executor paid the tax by a mistake of law and under protest. In the City of Covington Case, this court, in a well-considered and carefully prepared opinion, discussed the cases of City of Louisville v. Anderson, 79 Ky. 334, 42 Am. Rep. 220; Greene v. E. H. Taylor, Jr. & Sons, 184 Ky. 739, 212 S. W. 925, and a number of other cases, relied upon by counsel for Smith's executor, where there seemed to be confusion in our decisions, and carefully and clearly drew the distinction between the facts on which those cases were grounded and the one under consideration, and definitely showed the several distinct line of cases in which taxes paid under protest, under a mistake of law, or when the payment was directly unauthorized and in conflict with the law, could be collected, and reached the conclusion, and so decided, that where the payment of the taxes is made before the time when distraint was authorized, the payment at that time was voluntary and no recovery could be had.

In the City of Covington Case in quoting from the case of City of Louisville v. Becker, 139 Ky. 17, 129 S. W. 311, 28 L. R. A., N. S., 1045, we said (page 677):

"Manifestly, appellee paid voluntarily, without dispute, and before their collection could have been enforced, the taxes sued for, and while the loss of the amount claimed may prove a hardship to her, the law and the sound public policy under-

lying it compel us to refuse her the relief demanded. * * *

"Moreover, taxes are assessed and collected for purposes of government, and while it is a hardship to a citizen to be refused repayment of tax, as in this case illegally collected of him, though voluntarily paid, it must be borne in mind, if the city is required to show on every such complaint its right to retain the tax received, it could never regard the voluntary payment of tax as a thing settled, or know whether to apply such taxes as it may have collected to the discharge of its numerous obligations and municipal needs."

Also, in quoting from the case of Nettleton's Ex'r v. City of Louisville, 191 Ky. 581, 230 S. W. 957, we said:

"So that a proper interpretation of the plaintiff's petition as amended would appear to be that the executor in each of the years named paid the taxes before they became due for the commendable purpose of conserving and protecting the estate in his charge by getting the benefit of the discount fixed by law, but it is apparent that there could have been no coercion or involuntary · payment upon his part at a time before the taxes were due, and that his payment in each instance was a voluntary payment, for having paid them at a time when their collection could not have been coerced, their payment must of necessity have been voluntary."

In Dillon on Municipal Corporations, Volume 4, Fifth Ed., sec. 1620, the following principle is clearly stated:

"The coercion or duress which will render a payment of taxes involuntary must in general consist of some actual or threatened exercise of power possessed, or assumed to be possessed by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means or reasonable means of immediate relief except by making payment."

It being conceded that the taxes paid by Smith's executor were before distraint could be had under the law and paid at a time when there was no threat, coercion, distraint, or threat of distraint, no recovery can

be had. The objection, or more particular contentions, made by Miss Brooks, as testified to by her, when she paid the tax, as heretofore narrated, do not reach the standing of a protest, as contemplated by the law. However, if her statements amounted to a protest, the payment made by her being before the taxes became delinquent, her protest or objection to the payment could amount to nothing. The receipts filed with her deposition show on their face, when the taxes were paid; to wit, on the 27th day of June and the 3rd day of October, 1933; and further, that a credit was given to the tax by way of exoneration. What constituted that exoneration is not made clear to the court. In any event, applying the rule and principle approved in the City of Covington Case, supra, to the facts developed in this case, this court cannot escape the conclusion that the judgment in favor of Smith's executor must be reversed, and the judgment appealed from by Smith's executor on his cross appeal must be affirmed.

Wherefore, the case is reversed on the original appeal and affirmed on the cross-appeal. Further proceedings in the case are directed to be in conformity herewith.