# Wilhoit, Director of Banking, et al. v. Brown.

Nov. 19, 1943.

Peter, Heyburn & Marshall, Gavin H. Cochran, Kenneth H. Tuggle, Francis C. Brown and James M. Kane for appellants.

William Lewis & Son and H. C. Clay for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing:

The only question on the appeal is the amount of the fee to be allowed an attorney for the liquidator of a closed bank. The appellee, Murray L. Brown, had been paid a salary of $50 a month for 34 months as counselor of the Deputy Director of Banking, and sought the allowance of $8,435.75 additional, or total compensation of $10,115.75. The circuit court allowed $7,592.18 additional, making a total of $9,272.18. The Director of the Division of Banking and the Federal Deposit Insurance Corporation, which had insured the deposits of the bank, prosecute an appeal and contend that the additional sum ought not to exceed $3,320.

The Farmers State Bank of London closed December 21, 1938. Arlie Magee served as Deputy Banking Commissioner (as such officer was then called) in charge of its liquidation for five months and during that time Finley Hamilton was his attorney upon a salary of $50 a month. At the end of that period, Mr. Hamilton was named Deputy Commissioner and continued as such until he died on March 15, 1940. He was paid $200 a month for all of his services. Upon his death Mr. Magee was re-appointed and Mr. Brown was employed by the Director of Banking on a salary of $50 a month, and such additional fee as might be allowed by the court. This is evidenced by a letter of the Director of Banking. The court construed this as an employment on the basis of a fixed salary for legal advice or counsel and a reasonable fee for all other services rendered in the institution and prosecution of actions for the collection of the assets of the bank. We concur in that interpretation.

The case was presented to the circuit court by an ex parte petition filed by the attorney for the liquidating agent in the proceeding for a settlement of the affairs of the bank. The appellee maintains that his claim is in reality a common-law action on a contract to recover reasonable compensation and that the judgment is to be regarded as having been rendered on the verdict of a properly instructed jury; hence, that our review must be confined to a consideration of the evidence exclusively and we should measure its sufficiency without exercising our own judgment. Roaderer v. Schmitt, 258 Ky. 398, 80 S. W. (2d) 35. The Director of Banking and his deputies in the administration of the affairs of a closed institution are statutory receivers and are required to make reports to the circuit court, which reviews their actions and directs and controls them substantially as the court does a receiver appointed by the judge. Sec. 165a-17, Kentucky Statutes, now KRS 287.600. The allowance of an attorney's fee is the allowance of an item of cost of receivership and as such it is peculiarly within the power of a court of equity to fix. Johnston v. Stephens, 206 Ky. 83, 266 S. W. 881; Jennings v. Fidelity & Columbia Trust Co., 240 Ky. 24, 41 S. W. (2d) 537. Although a fiduciary may contract with an attorney as to the amount of his fee, its reasonableness remains with the court to determine. The trial court, and this court, on appeal, may bring to bear their knowledge of the facts disclosed in the record and reach their own conclusions as to

the reasonableness without being bound to accept opinion evidence as to the value of the services. Erdman's Adm'r v. Erdman's Adm'r, 231 Ky. 219, 21 S. W. (2d) 258; Maynard v. Maynard's Adm'r, 251 Ky. 246, 63 S. W. (2d) 567, 91 A. L. R. 697. It is not to be understood that this court will act arbitrarily or ignore the evidence or fail to give due consideration to the finding of reasonableness by the chancellor. The point is here stressed in response to the appellee's argument respecting the degree of consideration to be given the judgment.

A very substantial part of the assets of the closed bank had been collected when Mr. Brown became attorney for the liquidating agent. That constituted the "cream," or most of the liquid assets, so the matter of relative results is not of great importance for it is readily apparent that the collection of the unliquid or "frozen" assets involved a great deal more service with relatively poor results. During the course of his employment, Mr. Brown filed 76 suits in the United States District Court and the State circuit courts of several counties, and 53 suits in the quarterly courts, to collect obligations as well as numerous ex parte petitions for advice. The amount recovered is not definitely shown. Default judgments were taken in most of the cases and many of them proved worthless. In others only a fraction of the judgment was collected. In looking after this litigation the attorney made a number of trips at his own expense to Lexington and adjoining counties. Estimates as to the amount of the attorney's time consumed varies from one-fourth to one-half. Lawyers introduced by each side varied greatly in their judgments as to the reasonable value. Mr. Hiram Wilhoit, the Director of Banking, had had seven years' experience in that office, during which he had supervised the liquidation of 72 banking institutions. While he is not an attorney-at-law, he, of course, had become familiar with the fees allowed throughout the state for corresponding legal services. He testified that the fair and reasonable value of all of Mr. Brown's services, including $1,680, paid as salary, did not exceed $5,000. However, he testified that he had determined in the beginning to suggest to the Attorney General's office the approval of $4,000 additional fee.

The appellant relies upon Smith v. Kash, 253 Ky. 447, 69 S. W. (2d) 980, in which we held that compen-

sation of $150 a month was fair and reasonable. There were several elements in that case not here, for naturally the degree and character of legal services differ in each case of this kind. The courts have generally accepted the rules submitted by the American Bar Association as a highly persuasive test for the valuation of legal services and the elements that may be properly considered in making a charge therefor. They are embodied as Canon 12 of the Canons of Professional Ethics, as follows:

"In fixing fees lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

The test is substantially that which has heretofore been recognized by this court. See Axton v. Vance, 207 Ky. 580, 269 S. W. 534; Baxter v. Hubbard, 242 Ky. 751, 47 S. W. (2d) 743, 747. The exhaustive annotations un-

der the title, "Amount of attorney's compensation (in absence of contract or statute fixing amount)" in 143 A. L. R. 672, embrace a summary of the standards recognized by all the courts of this country and apparently have given the amounts allowed as attorney's fees in all the reported cases. Under existing conditions, we are not willing to accept the rule of some courts that attorney's fees are to be measured in part by comparison with the salaries paid the judges of the state. We are of opinion, as stated in Baxter v. Hubbard, supra, that "The laborer is worthy of his hire." We do not subscribe to the prayer of a good sister for her pastor: "Oh Lord, you keep him humble and we'll keep him poor."

Giving due consideration to the evidence and well-prepared opinion of the chancellor, and reviewing the record for ourselves, we have reached the conclusion that a fee of $5,000 in addition to the salary paid is fair and reasonable rather than $8,435.75 claimed by the attorney, or $3,320 conceded by the appellants, or $7,592.18 allowed by the circuit court.

Wherefore the judgment is reversed for the entry of appropriate orders consistent with this opinion.