**WEBSTER COUNTY SOIL CONSERVATION DISTRICT et al., Appellants,**

v.

**Lillian I. SHELTON, etc., et al., Appellees.**

**Lillian I. SHELTON, etc., et al., Appellants,**

v.

**W. S. CHILDERS et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 14, 1969.

Warren B. Miller, Dixon, for appellants.

Jerry W. Nall, Nall & Stephens, John D. Miller, Williams & Miller, Owensboro, for appellees.

EDWARD P. HILL, Judge.

The Crab Orchard Creek Watershed Conservancy District was established in Webster and Union Counties March 9, 1957. The district emcompassed some 50,000 acres of farmland in the two counties and involved approximately 536 separate landowners.

Pursuant to a referendum directed by the Webster Circuit Court following the opinion of this court in Shelton v. Webster County Soil Conservation District, Ky., 377 S.W.2d 81, a majority of the voters of the district voted June 26, 1964, to dissolve the district. Prior to the effective date of dissolution, the district had collected approximately $33,883.86 by way of assessments from its members, $6,645 of which had been invested in three parcels of real estate.

This suit was filed by Shelton and others, numbering about 400 of the 536 members, on behalf of all to recover and refund to them the funds and assets of the district.

Judgment was rendered by the trial court June 28, 1967, adjudging that plaintiffs were entitled to the funds and ordering a sale of the three tracts of land, the proceeds

from which were ordered included with the funds ordered returned to plaintiffs in proportion to the respective amounts paid in by them. All other matters "including plaintiffs' attorney fee" were "continued and reserved for the court's further consideration."

Defendant served notice of appeal July 27, 1967, from the judgment dated June 28, 1967.

By supplemental judgment entered August 23, 1967, plaintiffs' attorney, Jerry W. Nall, was allotted $7,562.46 for legal services.

Plaintiffs and Jerry W. Nall appealed the August 23, 1967, judgment by notice of appeal given September 21, 1967, in which Jerry W. Nall contends he had a written contract with approximately 400 of the members under which it was agreed he should have a contingent fee of 50 percent of the recovery. The trial court allowed him only 25 percent.

We are first confronted with a motion by plaintiffs (Shelton et al.) to dismiss the appeal taken by defendants from the judgment of June 28, 1967, on the grounds that the judgment was not a final judgment but interlocutory in character since the judgment reserved the question of attorney fee. Plaintiffs argue that this is an action wherein "multiple claims" are involved within the meaning of CR 54.02 and that the judgment was not made final by the requirements of CR 54.02, thus this court has no jurisdiction of the appeal.

■ With certain enumerated exceptions, not important here, this court has appellate jurisdiction only of "*final* orders and judgments of circuit courts in civil cases." KRS 21.060. (Emphasis ours.)

■ In the interest of expediting litigation and possibly to prevent piecemeal appeals, this court has adopted CR 54.02, which permits aggrieved litigants in multiple claims actions to appeal to this court from adverse rulings before final judgment.

But this right is contingent upon a recitation in the order or judgment, from which the appeal is desired, to the effect that (1) "there is no just reason for delay," and (2) such order or judgment "is final." This section of our Rules of Civil Procerdure is substantially the same as F.R. C.P. 54(b).

The question here is whether this case is a "multiple claims" action within the meaning of CR 54.02. It should be pointed out that the real parties in interest on the date of judgment, June 28, 1967, were the member-landowners, seeking return of money paid into the district, as plaintiffs, and the district along with the Webster and Union County Soil Conservation Districts, claiming that upon the dissolution of the watershed district they are entitled to the funds, as defendants.

■ In Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478 (1942), and Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297, it is written at page 437, 76 S.Ct. at page 900 that: "The District Court cannot in the exercise of its discretion treat as 'final' that which is not 'final' within the meaning of § 1291." (Substantially KRS 21.060.) By the same token, neither can the circuit court "reserve" a question not then before the court. In the instant case on the date of the first judgment, Nall was not even a party, not having filed motion for a fee. It was entirely possible for the attorney to settle all questions relative to his fee, making it unnecessary that another or separate claim be presented.

In Rieser v. Baltimore and Ohio Railroad Company, 2 Cir., 224 F.2d 198 (1955), at page 199 the federal court said:

"The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced."

■ Plaintiffs' attorney did not become a party to the litigation until July 28, 1967, when he filed his motion for attorney fee although he certified he mailed a copy of his motion July 25, 1967, which is not disputed. It is true the judgment anticipated the question of attorney fee would be later presented when it reserved that question. But the fact remains that on the date of judgment (June 28, 1967), there was only one claim presented.

To classify this action as a multiple claims one would enable the attorney to wait until after the expiration of the 30-day period, in which the losing party has to give notice of appeal, to make his motion for fee and thus become a party and thereby defeat the appeal of the party against whom the judgment was entered. This result was not intended by CR 54.02. The motion to dismiss appeal of defendants is overruled.

This brings us to the merits of the case and presents the question whether plaintiffs are entitled to recover the respective amounts paid by them to the watershed district as the judgment directs. Perhaps it should be made clear here that the Webster County Soil Conservation District is coextensive with Webster County, while the Crab Orchard Creek Water Conservancy District is separate and distinct from Webster County Soil Conservation District and covers parts of two counties, Webster and Union. These facts, we think, are important in resolving the question.

We begin with the realization that under our decisions it is about as difficult to recover taxes or assessments once made, as it is to "draw blood from a turnip." There are instances, however, where they may be recovered—as in cases of fraud, mistake, duress, or coercion. See Duncan's Trustee v. City of Louisville, 10 Ky.Opin. 126, and City of Paducah v. Smith's Ex'r, 273 Ky. 703, 117 S.W.2d 924. But we may be dealing with a special assessment not a tax, in which event there may be a different rule.

■■ We repeat, the purpose for which the assessments were paid has failed. The watershed district has been dissolved. What becomes of its money and assets? By a 1966 act of the legislature, the assets should be turned over to the soil conservation district. But this act was passed long after the dissolution of Crab Orchard Creek Watershed Conservancy District. A statute will not be given a retroactive effect unless an intent to do so is clearly expressed therein. People ex rel. Eitel v. Lindheimer, 371 Ill. 367, 21 N.E.2d 318, 124 A.L.R. 1472, and Duke Power Co. v. South Carolina Tax Commission, 4 Cir., 81 F.2d 513.

Also, if this be deemed a tax, there is the inhibition in § 180 of the Constitution which clearly states that "no tax levied and collected for one purpose shall ever be devoted to another purpose." Under this section it has been held that levies for school purposes cannot be used to establish a free library. See Board of Education of Covington v. Board of Trustees Pub. Library, 113 Ky. 234, 68 S.W.2d 10.

We have been unable to find in this or any other jurisdiction a case in point on this question. Considering the fact that the members of Crab Orchard included part but not all the landowners in Webster County as well as part but not all the landowners in Union County, it would not seem just to take the money of Crab Orchard's members and turn it over to Webster and Union so that Webster and Union landowners, who were not similarily assessed, would receive benefits to which they did not contribute, and the tax burden of Crab Orchard's members, residing in Webster and Union, would be unequal with that of other landowners of the two soil conservation districts. Such action violates the spirit of § 171 of the Constitution, which requires uniformity and equality of taxation.

■ It seems to us that Crab Orchard is a distinct political subdivision, independent of any state, county, or city political subdivision, having a limited and specific pur-

pose. KRS 262.300 and Shelton v. Webster County Soil Conservation District, supra. Assessments paid into its treasury are not levied under general powers of taxation. But the fact that Crab Orchard is a political subdivision of a soil conservation district, as indicated in *Shelton*, supra, is not controlling in resolving the question at hand.

A definite distinction is recognized between the right to recover taxes levied under the general powers of taxation and the right to recover "special assessments." We find authority in 52A C.J.S. Levees & Flood Control § 29, p. 828, for designating the amounts paid in by Crab Orchard's members as "special assessments," wherein it is written:

"Local assessments for levee purposes are not, strictly speaking, taxes, since they are [1] not levied on taxable property generally [2] but only on particular property specially benefited, and [3] in proportion and with direct reference, to the benefit received by the property. They [4] are not deemed to be a burden, but the equivalent of the benefit to, or the enhanced value of, the property derived from the improvement.

"Local assessments for levee and flood control purposes, while levied under the taxing power, in its broadest sense, are not, except in some jurisdictions considered taxes within the constitutional restrictions on the power of taxation, such as that it must be equal and uniform, or in proportion to the value of the property; nor are such assessments considered taxes within constitutional provisions limiting the amount of taxes which can be imposed. In some, but not other, jurisdictions the assessment of benefits is justified under the police power rather than the taxing power.

"Whether a particular imposition is a tax or assessment is determined by the legislative intent, the language of the statute, and the incidents of the imposition, and it has frequently been held that a charge is an assessment rather than a tax, even though denominated a tax. A levy has been held to be an assessment and not a tax, even though it is imposed according to the value of the property charged. The fact that the assessment is to be levied and collected in the same manner as general county taxes has been held not to affect its character as an assessment."

Another cognate reason for allowing recovery of the funds in question by Crab Orchard's members is the unequal consequences of disallowing recovery. Crab Orchard's members should not be required to contribute to Webster and Union County Soil Conservation Districts, Crab Orchard being only a small part of the soil district of the two counties, as this course would be an unjust enrichment of the soil districts to say nothing of the inequality of the tax burden. See District of Columbia v. Thompson, 281 U.S. 25, at page 31, 50 S.Ct. 172, at page 174, 74 L.Ed. 677, at page 682 from which we quote:

" 'The effect of the abandonment by the city of the project of "extending and opening" the proposed street for and on account of which, and which only, the assessment was made, is that the consideration of the assessment has wholly failed. So that the city stands in the position of holding in its treasury money collected from the plaintiff which it has no right in equity, good conscience, or common honesty to retain, because the purpose for which it was collected has been completely abandoned. In such circumstances no statute is required to impose upon the city a legal obligation to make restitution. An action lies as at common law for money had and received. * * * That the city is a municipal corporation does not distinguish it from a private person in this respect.' "

We agree with the trial court that plaintiffs are entitled to recover the funds in question and the proceeds from the sale of real estate.

We come now to the appeal of Jerry W. Nall concerning his attorney fee. He had a written contract with about 400 members of Crab Orchard, in which they agreed to pay him a contingent attorney fee of "an amount" equal to 50 percent of recovery. The trial court ignored this contract and allowed the attorney 25 percent of the recovery both as to those persons who signed for a 50-percent contingent fee and those who did not.

Mr. Nall filed his written contract supported by three affidavits, stating his claim to a 50-percent fee was reasonable. No objection was made to his motion; nor was any counteraffidavit or other evidence offered to disprove his claim for fee was reasonable. By reciting these circumstances we do not mean to imply that countervailing material is always required where the trial court is familiar with the record and with the nature and extent of service rendered. Wilhoit v. Brown, 295 Ky. 732, 175 S.W.2d 529. Yet in the present case the attorney claims in his brief that he performed considerable services not appearing in the record.

It is noted that the persons who signed the contract with Mr. Nall are joined as appellants in this appeal. A brief has been filed apparently in behalf of those who did not sign, in which, although admitting they received a benefit from Mr. Nall's services, it is argued that the 25-percent fee allowed is unreasonable and excessive. Yet they do not prosecute a cross-appeal.

 Defendants also contend that Mr. Nall having accepted the fee allowed, he waived any right of appeal he otherwise may have had. 4 Am.Jur.2d, Appeal and Error, § 250, is cited in support of waiver. A careful reading of this section does not support appellees' position on this appeal. It states at page 745:

"A party who accepts an award or legal advantage under an order, judgment, or decree ordinarily waives his right to any such *review of the adjudi-*

*cation as may again put in issue his right to the benefit which he has accepted."* (Emphasis ours.)

Appellees also cite Wilhoit v. Brown, supra, which when read does not support or touch upon the question of waiver. They also cite Howell v. Highland Cemetery Co., 297 Ky. 659, 181 S.W.2d 44, in which we are unable to find any reference to the question of waiver. However, in *Howell* there is plain and emphatic language in regard to the liability of appellees for a reasonable fee, to which we refer later in this opinion.

Appellees are right in saying that ordinarily one may not accept the benefits of a judgment and then appeal therefrom. To this rule there is a well-recognized exception as announced in 4 Am.Jur.2d, Appeal and Error, § 255, a portion of which we quote from page 751:

"The rule that a right of appellate review survives the acceptance of an amount which will not be put in jeopardy by the review sought applies not only where the accepted amount is irrevocably conceded by the opposing party as due, but wherever the controversy raised by the appeal or petition for review is legally confined to liability for the additional amount claimed. * * * *Where the acceptor has not put that right in jeopardy by his own proceeding, he incurs no waiver, though it may still be endangered by his opponent's cross appeal."* (Emphasis ours.)

As noted above there was no cross appeal. Neither did appellees supersede the judgment.

The appeal has in no way jeopardized the rights of appellees as to the fee allowed. It cannot be disturbed or decreased on appeal. The only question is whether appellant is entitled to a greater allowance.

We conclude the acceptance of the award by Mr. Nall did not amount to a waiver of his right to appellate review.

This brings us to the merits of this appeal, wherein appellants' attorney maintains he is entitled to have his contract for a 50-percent fee enforced against those who signed the contract, and those who did not sign are liable for their proportionate part of a reasonable fee. Appellees counter with the argument that the fee is excessive as to appellees.

We readily agree that the trial court had no right or authority to impair the obligations of the contract between Mr. Nall and his clients. We can discover nothing illegal or contrary to public policy in the contract. In fact, no party to the contract has any objection to it so far as this record reveals. Although the trial court allowed only a 25-percent fee and directed that it be taxed as cost and deducted from the funds, the trial court in the next paragraph directed the master commissioner to "pay each taxpayer's share who has a contract with Mr. Nall to said taxpayer and Jerry W. Nall jointly, in order that they might adjust the proceeds according to their contract."

In one breath the trial court is saying: Your contract for fee will not be recognized, but here is the money, work it out for yourselves.

We conclude Mr. Nall had a right to have his contract enforced against his own clients strictly in accordance with the terms thereof.

As to the parties who did not contract with Mr. Nall but who realized a benefit from his efforts, their responsibility is fixed by a 1954 act of the legislature, now KRS 412.070, not cited by either party, which declares that:

"In actions * * * for the recovery of money * * * which has been illegally or improperly collected, withheld, or converted, if one or more of the * * * parties in interest has prosecuted for the benefit of others interested with him, and has been to trouble and expense in that connection, the court shall allow him his necessary expenses, and his attorney reasonable compensation for his services, in addition to the costs. *This allowance shall be paid* out of the funds recovered *before* distribution." (Emphasis ours.)

See also Howell v. Highland Cemetery Co., supra, 181 S.W.2d at page 45:

"It would be unfair to permit one member of a class interested in the outcome of a lawsuit brought for his benefit to stand by and permit another member to bear all the costs and expense of the litigation. When a fund is recovered for the benefit of several parties in interest each should bear his share of the burden incident to recovery in proportion to the benefits derived therefrom. KRS 412.070. Smith v. Graham, 274 Ky. 144, 118 S.W.2d 194."

The above statute continues by providing for notice to the parties by publication in a newspaper of general circulation, which was done in the instant case.

We hold that those parties who did not enter into contract as to fee are, nevertheless, liable for a reasonable fee. The question, What is a reasonable fee? being one that must first be determined by the trial court, the case is remanded with directions to fix a reasonable fee and direct that such noncontracting parties bear their *proportionate part thereof.*

The judgment in the first above-styled case is affirmed. In the second appeal, the judgment is reversed for proceedings consistent with this opinion.

All concur.